PAUL J. KANE, Plaintiff-Appellee, v. WILLIAM McDERMOTT, Defendant-Appellant.

Fourth District   No. 4—89—0385

Opinion filed November 30, 1989.

Christopher W. Bohlen, of Blanke, Norden, Barmann & Bohlen, P.C., of Kankakee, for appellant.

Strong, Blakeman & Schrock, Ltd., of Pontiac (Alan M. Schrock, of counsel), for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff Paul Kane brought an action seeking specific performance of an option to purchase real estate, contained in a lease between him and his uncle, James McDermott. Defendant, William McDermott, had inherited the property from James McDermott. Defendant opposed specific performance and brought a counterclaim seeking possession of the disputed property and damages. The trial court granted plaintiff specific performance and found for plaintiff on the counterclaim.

Defendant appeals, arguing the trial court abused its discretion in granting specific performance because the description of the real estate was not definite, the option failed to set forth sufficient terms and conditions of the sale, and the sales price of the property was not fixed in the option. Second, defendant argues the trial court erred in admitting testimony concerning custom and usage.

We affirm.

The parties filed a stipulation of facts. On August 18, 1972, James McDermott and plaintiff entered an Illinois crop-share cash farm lease. The lease term started on March 1, 1973, and ended on March 1, 1988. The lease applied to approximately 320 acres of land. The legal description of all of the leased property was contained in the lease.

The part of the leased land at issue here is described as:

"The West Half of the Northwest Quarter of Section 29, in Township 28 North, Range 9 East of the Third Principal Meridian, Mona Township, Ford County, Illinois."

The lease was validly executed, supported by consideration, and in full force and effect during its entire term. Plaintiff complied with the term of the lease and was not in breach with respect to it.

The parties further stipulated that defendant is the current owner in fee simple of the disputed 80 acres, subject to certain liens and encumbrances. James McDermott devised the property to defendant. Prior to James McDermott's death and after it, defendant knew of the crop lease and its terms. Plaintiff continued to farm the leased land as defendant's tenant. The lease provided it was binding upon heirs, executors, administrators, and assigns of the original landlord and tenant.

Section 7 of the lease is entitled "Additional Agreements." It is

handwritten and states:

> "It is agreed that the tenant, and/or his heirs, is to have first option to purchase any part or all of the land farmed by the tenant, and/or his heirs and owned by the landlord and/or his heirs at the appraised bid as established by three disinterested parties."

On July 8, 1987, plaintiff sent a letter by certified mail to defendant. The letter states that plaintiff is exercising the option granted in section 7 of the lease. On July 22, 1987, defendant sent a return letter to plaintiff. The return letter from defendant's attorneys stated that they had serious questions about the enforceability of the option and defendant did not intend to comply with its terms.

On August 17, 1987, plaintiff recorded the lease and a notice that he intended to exercise the option to purchase the west half of the northwest quarter of section 29, in township 28 north, range 9 east of the third principal meridian, in Mona Township, which was contained within the leased property. Defendant received a copy of the recorded notice.

Defendant had not offered to sell the property to any third party. Defendant had not agreed to sell the property to plaintiff. No price had been determined or agreed upon between plaintiff and defendant. However, plaintiff had been ready and financially able to purchase the property.

Prior to November 1, 1987, defendant served plaintiff with a written notice to terminate the tenancy. Defendant had the opportunity to lease the disputed property for the 1988 crop year at $126 per tillable acre to a third party. Plaintiff did not surrender possession of the property on March 1, 1988, and continued to farm it, pursuant to his claim under the lease. Defendant did not consent to the holdover.

At the hearing, plaintiff called Faraday Strock, a retired attorney who specialized in real estate transactions in Ford County, as a witness. Strock stated he was familiar with custom as it applied to general terms and provisions in real estate contracts absent an agreement by the parties to the contrary. Title would typically be transferred by warranty deed. It would be merchantable title shown by an abstract or title insurance policy. The customary exceptions were for tile drains and utility easements. Absent an agreement to the contrary, the seller would pay the cost of proving merchantable title. Revenue stamps were the obligation of the seller. Unless the contract expressly provided that the property was to be purchased subject to mortgages, they would typically have to be discharged prior to closing.

Strock further testified that in a farm transaction, closing possession is typically given on March 1 of the year following the termination of the tenant's lease. In a farm real estate transaction, taxes are to be paid by the owner of the land who receives the crop rent for the year. Most parties would ordinarily anticipate taxes would be a part of the contract to sell real estate. Ordinarily, a provision concerning taxes would be included in a real estate sales contract, in addition to a provision concerning the growing crops.

Strock further testified that based on custom and practice, each party would select an appraiser. The two appraisers would select a third appraiser. The parties would pay the expenses of their appraiser and share the cost of the third. If the parties refused to appoint an appraiser to set a purchase price, the court would make the appointment. Strock stated he knew plaintiff and had done legal work for him. He also knew defendant and had represented him in the past. He represented defendant in a guardianship matter related to his father. His prior contacts did not affect his testimony relating to custom and practice in real estate matters.

On cross-examination, Strock admitted discussing the instant lease with defendant. If he had drafted a contract for the sale of property, he would have included provisions related to taxes, title, and the mechanics of the appraisal process. "Appraised bid" did not have legal significance outside the context of the option. The custom and practice he discussed would be commonly understood by lay people in the farming community who had been involved in numerous real estate transactions.

The trial court found section 7 of the lease was a specifically enforceable term. The court (1) ordered defendant to convey the real estate to plaintiff at the fair market value as of the date plaintiff exercised the option; (2) appointed three disinterested appraisers; (3) ordered the parties to share the appraisal expenses; (4) instructed the appraisers to reach one value if they could agree; (5) stated the value of the property would be averaged if the appraisers disagreed; (6) ordered defendant to provide plaintiff with proof of merchantable title; (7) stated the property should be sold subject to easements, covenants, restrictions, and rights of way but free of all other mortgage liens and encumbrances, which were to be satisfied by the proceeds of the sale; (8) ordered defendant to pay the real estate transfer tax and the cost of recording the deed; (9) stated defendant was responsible for the 1987 real estate taxes and plaintiff was responsible for the 1988 real estate taxes; and (10) stated plaintiff was entitled to continued possession of the property. The court further stated plaintiff was

entitled to receive all 1988 crops and the agricultural payments for the 1988 crop year and thereafter.

The trial court has discretion in determining whether it will grant specific performance of a contract. (*Dawdy v. Sample* (1989), 178 Ill. App. 3d 118, 532 N.E.2d 1128.) A contract for the sale of real estate cannot be specifically enforced by a court unless the writing contains the essential contract terms, including (1) the names of the vendor and vendee; (2) a description of the party; (3) the sales price, or a means of determining it, and the terms and conditions of sale; and (4) the signature of the party to be charged. (*Leach v. Hazel* (1947), 398 Ill. 33, 74 N.E.2d 797; *McDaniel v. Silvernail* (1976), 37 Ill. App. 3d 884, 346 N.E.2d 382.) The contract's terms must be so certain and unambiguous that the court can require the specific thing contracted for be done. Where the terms of a contract are ambiguous or where the writing is capable of more than one construction, parol evidence is admissible to explain or ascertain what the parties intended. However, parol evidence may not be used to supply missing terms. (*Santo v. Santo* (1986), 146 Ill. App. 3d 774, 497 N.E.2d 492.) The court should not make a new contract for the parties. (*Lencioni v. Brill* (1977), 50 Ill. App. 3d 802, 365 N.E.2d 1169.) Still, it is not necessary for the contract to state specifically all details in regard to matters concerning which the parties are contracting. (*Welsh v. Jakstas* (1948), 401 Ill. 288, 82 N.E.2d 53.) Option contracts will, if possible, be interpreted so as to effectuate the intent of the parties. *Bonde v. Weber* (1955), 6 Ill. 2d 365, 128 N.E.2d 883.

With these principles in mind, we turn to defendant's specific contentions. Initially, defendant argues the property is insufficiently described in the option. The option states that the tenant may purchase all or part of the land farmed by the tenant and owned by the landlord or his heirs. Defendant's argument has little merit. A description of property is sufficiently definite if it will enable a surveyor, by aid of extrinsic evidence, to locate the property. Any reference to ownership or other matters which would make the description definite will be considered to locate the property. *Werling v. Grosse* (1979), 76 Ill. App. 3d 834, 395 N.E.2d 629; *Bliss v. Rhodes* (1978), 66 Ill. App. 3d 895, 384 N.E.2d 512.

Here, the crop lease, which contains the option, contains the following description of leased property:

"NW ¼ of Sec. 29 in Mona Twp—Ford Co—Twp 28 N—Range 9E; and N ½ of NE ¼ of Sec. 8 in Sullivan Twp—Livingston Co.—Twp 28 N—Range 8E; and N ½ of SE ¼ of Sec. 21 in Sullivan Twp—Livingston Co.—Twp 28 N—Range 8E."

Plaintiff sought to enforce the option only as to the west half of the northwest quarter of section 29 in Mona Township. Defendant in essence asks this court to discard the lease and view the option in isolation. The provisions of the lease should be read together to effectuate the parties' intentions. (*Bonde*, 6 Ill. 2d 365, 128 N.E.2d 883.) Viewing the option in context, a sufficiently definite description of the property is present.

Defendant contends that the contract failed to set forth sufficient terms and conditions to allow its enforcement. Defendant's contentions with regard to the appraisers will be addressed later. Defendant argues specifically that the contract is indefinite because it does not state who should pay taxes, that the seller should pay documentary stamps, does not set forth the type of deed, and does not set forth a closing date and place.

■ A contract is not rendered incomplete by failure to provide for assumption or apportionment of taxes, where the matter is determinable by statute or custom. (81 C.J.S. *Specific Performance* §811 (1961).) Here, Strock testified about the custom related to apportionment of taxes. This omission would not render the contract unenforceable. Similarly, documentary stamps are by statute to be paid by the seller. (Ill. Rev. Stat. 1987, ch. 120, par. 1003.) Thus, the absence of this provision does not render the option unenforceable.

■ It is also not necessary that the contract specify the character of the deed to be executed. It may be implied that conveyance by general warranty deed was intended. (*Welsh*, 401 Ill. 288, 82 N.E.2d 53; 81 C.J.S. *Specific Performance* §810 (1961); but see contra *Favata v. Mercer* (1951), 409 Ill. 271, 99 N.E.2d 116 (Court denied specific performance due to fraud by the buyer. It also noted the writing did not state anything about the character of the deed, merely that seller would make good the title. Plaintiffs' complaint asked for conveyance by warranty deed. The court stated a quitclaim deed would be equally effective. Therefore, it concluded plaintiffs were attempting to compel defendant to do something different than what she had agreed to do).) Under the circumstances presented here, failure to specify how title was to be conveyed did not render the option unenforceable.

■ ■ Defendant alleges the option was unenforceable because it did not set a closing date or place. Failure of a contract to specify the time of payment may render it too incomplete for specific performance. However, such an omission will not preclude specific enforcement of the contract where the time for payment may be supplied by implication. The law will imply performance within a reasonable time. What time is reasonable depends upon the circumstances surrounding

the case. (*Ullsperger v. Meyer* (1905), 217 Ill. 262, 267, 75 N.E. 482, 484; 81 C.J.S. *Specific Performance* §810 (1961).) Here, the trial court set a time for closing based upon the type of sale and community custom. The option was not rendered indefinite by failure to specify these details.

The cases defendant relies upon are distinguishable from the instant case. In *Lencioni*, the defendant agreed to provide a standard-form mortgage. However, the parties could not agree about the contents of the mortgage. Thus, the terms of payment were too indefinite, and the court refused to specifically enforce the contract. The court noted the phrase "standard-form mortgage" did not have the same meaning for the parties. It would not provide mortgage payment terms, the grace period before default, and other terms.

Similarly, in *Threlkeld v. Inglett* (1919), 289 Ill. 90, 124 N.E. 368, the parties agreed to transfer oil, coal, and gas under 320 acres. The option provided transfer would be by a form deed. Many different forms of deeds used in the area were offered into evidence. The court would not specifically enforce the option and select a deed for the parties.

Here, the taxes, closing, and warranty deed provisions were all nonessential matters, missing from the option but which could be supplied by implication. In contrast, the *Lencioni* and *Threlkeld* cases involved fundamental disputes as to the definiteness and meaning of the terms in the agreements which the parties sought to enforce.

Defendant next argues the option failed to set forth a price and the court erred in supplementing the agreement by providing for the appointment of appraisers, payment of their fees, and settlement of an agreed valuation if they failed to agree. Initially, defendant contends the option does not state the sales price is to be fair market value and this conclusion cannot be reached from a reading of the language. We disagree.

■■ ■ The option states the tenant may purchase "at the appraised bid as established by three disinterested persons." "Appraised" is defined as fixing or setting a price or value upon or to value property at what it is worth. (Black's Law Dictionary 92 (5th ed. 1979).) "Bid" is defined as "[a]n offer by an intend[ed] purchaser to pay a designated price for property which is about to be sold at auction." (Black's Law Dictionary 147 (5th ed. 1979).) "Fair market value" is defined as "[t]he amount at which property would change hands between a willing buyer and a willing seller." (Black's Law Dictionary 537 (5th ed. 1979).) Thus, by definition, the option stated the price was to be the fair market value of the property as set by three

disinterested persons. (See *Miller v. Bloomberg* (1975), 26 Ill. App. 3d 18, 324 N.E.2d 207.) The trial court properly considered custom and practice to determine who would share the appraisers' fees and how to reach a sales price if the appraisers could not agree as to valuation. See generally *Guel v. Bullock* (1984), 127 Ill. App. 3d 36, 468 N.E.2d 811.

Finally, defendant argues the trial court erred in admitting testimony as to the custom and practice in the community. Parol evidence may be used to clarify the terms of an agreement. (*Guel*, 127 Ill. App. 3d 36, 468 N.E.2d 811.) Here, the option evidenced the parties' intentions to be bound by the agreement. It also shows they agreed on the essential terms of the sale. Testimony on custom and practice was relevant and useful in resolving ambiguities as to nonessential conditions.

Defendant's contention that Strock was precluded from testifying as an expert because he had performed legal services for defendant is without merit. Strock did not testify as to any confidential communication but only as to custom and practice in the community.

For the above reasons, we affirm the trial court.

Affirmed.

KNECHT and GREEN, JJ., concur.