WHITE HEN PANTRY, INC., Plaintiff-Appellee, v. RAK WOO CHA *et al.*, Defendants-Appellants (Albert M.R. Corporation *et al.*, Defendants).

First District (1st Division)   No. 1—90—0582

Opinion filed May 20, 1991.

Terrance J. Coughlin, of Chicago, for appellants.

McDermott, Will & Emery, of Chicago (Bruce H. Weitzman and Mark J. Buonaiuto, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:
This appeal arises from actions filed by White Hen Pantry, Inc. (White Hen), Albert M.R. Corporation (Albert Corp.), and Rak Woo

Cha and Ja Young Cha (the Chas), seeking declaratory judgment and specific performance under three separate contracts regarding real property owned by Anny M. Roth (Roth). The Chas appeal from the order of the circuit court of Cook County declaring the Chas/Roth contract null and void and granting specific performance of the Albert Corp./White Hen contract and the Albert Corp./Roth option contract. White Hen filed a brief in response to the appeal.

On September 13, 1977, Roth entered into a lease agreement (the lease) with Albert Corp. (Albert Corp./Roth option contract) for a base five-year period expiring October 31, 1982, with an "option to renew" the lease for two five-year periods. Albert Corp. sent timely notice to extend the lease for the two five-year periods. The lease also contained a rider which provided that Albert Corp. had an option to purchase the real estate "at any time during the base period of the lease" for $100,000 and that the option "shall run with the option to renew the lease." In addition to the option to purchase, the lease further provided that Albert Corp. had a "right of first refusal" during the base term of the lease and during the option to renew periods at a $100,000 purchase price upon Roth's receipt of a *bona fide* offer to purchase the realty.

White Hen learned that Albert Corp. had a lease with Roth, which included an option to purchase the property. On March 26, 1986, Albert Corp. entered into a contract with White Hen (Albert Corp./White Hen contract), providing for the sale of the property for a purchase price of $165,000, $100,000 of which was placed into an escrow account with Chicago Title & Trust Company before closing to cover the cost of acquiring the property from Roth. On July 28, 1986, White Hen executed escrow trust instructions to close the sale.

The Chas also became interested in the property, and in March 1986, indicated their desire to purchase the property to Albert Corp. Albert Corp. informed Rak Woo Cha, a licensed real estate broker, of Albert Corp.'s lease with Roth.

In April 1986, the Chas tendered an offer to purchase the property to Roth's real estate broker. Roth's broker then told Rak Woo Cha that Albert Corp. had an option to purchase and a right of first refusal with regard to the property.

Upon learning of the Chas' above pending offer, Albert Corp. responded that it considered its time to exercise its right of first refusal to commence only after an accepted offer. On May 16, 1986, Roth's attorney sent a copy of Roth's contract with the Chas (Chas/Roth contract) to Albert Corp., along with a "Notice Pursuant to Right of First Refusal" stating that Roth had received an offer from the Chas

to purchase the property and that Roth and the Chas had agreed that Albert Corp. had a 21-day period in which to exercise its right of first refusal.

On June 12, 1986, Albert Corp. sent a letter to Roth's attorney stating that it intended to exercise its option to purchase the real estate pursuant to the terms of the lease. In early September 1986, Roth's broker informed the Chas that White Hen was also attempting to purchase the property. On September 25, 1986, Albert Corp.'s attorney sent a letter to the Chas notifying them that Albert Corp. had exercised its option to purchase the property enclosing a copy of its June 12, 1986, letter to Roth.

In a letter dated October 3, 1986, Albert Corp. advised Roth's attorney that it had deposited a $100,000 check in escrow to be applied to the purchase price of the property pursuant to its option to purchase. Albert Corp. further requested that the attorney deposit with the escrowee certain ownership, mortgage, and tax documentation regarding the real estate. In a letter dated December 3, 1986, White Hen requested the return of its $100,000 escrow deposit because the escrow instructions had not been executed, but indicated that the funds would be redeposited once the instructions had been executed.

White Hen commenced this lawsuit on March 5, 1987, after Roth refused to convey the property to Albert Corp., seeking specific performance of the Albert Corp./White Hen contract and seeking declaratory relief from any claims by the Chas. In its answer, Albert Corp. admitted the allegations of the complaint and filed a similar cross-claim against Roth regarding the Albert Corp./Roth option contract. Roth was found to be in default after she appeared but failed to file a responsive pleading. After trial was commenced and concluded on November 13, 1989, the circuit court allowed the Chas to file a cross-claim seeking a declaration of their rights under the Chas/Roth contract, as well as specific performance of the Chas/Roth contract.

The circuit court held that Albert Corp.'s June 12, 1986, letter to Roth constituted a valid exercise of Albert Corp.'s option to purchase the property and that the Chas/Roth agreement is of no force and effect because it was subject to the Albert Corp./Roth option contract. The court further held that Albert Corp. is entitled to specific performance of the Albert Corp./Roth option contract and that White Hen is entitled to specific performance of the Albert Corp./White Hen contract.

The Chas appeal the circuit court's rulings, arguing that (1) Albert Corp. failed to timely assert its right of first refusal and, consequently, they became equitable owners of the property, entitled to no-

tice that Albert Corp. was exercising its option to purchase, (2) Albert Corp. failed to properly exercise its option to purchase the property, (3) the lease rider was vague and unenforceable by specific performance, and (4) White Hen lacked standing to enforce the lease.

■ Regarding its first basis, Albert Corp. was not required to adhere to the 21-day period upon which Roth and the Chas agreed Albert Corp. must assert its right of first refusal because Albert Corp. was not a party to that agreement. Furthermore, Albert Corp.'s lease with Roth did not contain such a period in which to assert its right. The Chas, therefore, never became equitable owners of the property as they argued they did because Albert Corp.'s right of first refusal never expired and, consequently, the Chas were not entitled to notice of Albert Corp.'s exercise of the option.

■ Second, the Chas contend that Albert Corp. failed to properly exercise its option to purchase the property. The trial court expressly found that Albert Corp.'s June 12, 1986, letter to Roth's attorney constituted a proper exercise of the option contract. There is ample evidence in the record and Illinois case law to support this finding. Albert Corp.'s letter to Roth's attorney stated:

> "Pursuant to the terms of the above-mentioned lease please let this serve as notice that the tenant intends to exercise its option to purchase the real estate located at 5723 North Lincoln Avenue, Chicago, Illinois for $100,000."

In *Kadansky v. Fickett* (1973), 54 Ill. 2d 14, 15, 294 N.E.2d 262, 263, the court held similar language that the lessees "wish[ed] to exercise their option *** pursuant to the terms of their Option Contract" to be an effective and unconditional exercise of the option. The Illinois Supreme Court further found that a second paragraph in the same letter, which notified the owner's attorney that the lessee and the owner had generally agreed to a method of payment that varied with that set out in the agreement, did not assert a new demand or condition and did not imply that the lessee's exercise of the option was conditional upon the seller's acceptance of new terms of payments. *Kadansky*, 54 Ill. 2d at 16, 294 N.E.2d at 263.

The court's initial finding in *Kadansky* indicates that the June 12, 1986, letter in the case at bar constitutes a valid acceptance of the option provision. Albert Corp.'s letter referred to the terms of the option provision and did not imply that the exercise of the option was in any way conditional. The circuit court, therefore, properly found Albert Corp. timely and properly exercised its option to purchase the property.

■ Third, the Chas contend that the Albert Corp./Roth option contract is invalid because the terms in the lease option provision relating to the length of the option period are vague and uncertain and unenforceable by an order of specific performance because material terms are missing. The Chas direct us to four paragraphs in the lease, which they maintain are vague and uncertain regarding whether the option period existed only during the base period of the lease or whether it extended during the lease's renewal periods:

"17A. The Lessors hereby grant Lessees or Lessees' nominee the option to purchase the real estate described as follows: [legal description] at any time during the base period of the lease for the sum of ONE HUNDRED THOUSAND AND NO/100 ($100,000.00) DOLLARS.

17B. Lessors further grant to Lessee the option of extending or renewing the Prime Lease for a term of five (5) years; notice of intent to execute the Option to the Lessors in writing Ninety (90) days prior to the expiration of the base lease, to wit: no later than August 1, 1982, at a monthly rental of SIX HUNDRED FIFTY AND NO/100 ($650.00) DOLLARS per month. The option to purchase the real estate shall for $100,000 run with the option to renew the lease.

17C. Lessee has the right of first refusal to purchase the realty upon the receipt of a Bona Fide offer by the Lessor. The price shall remain at ONE HUNDRED THOUSAND AND NO/100 ($100,000.00) DOLLARS irrespective of the amount offered to Lessor, during the term of both options. Right of first refusal shall apply during the term of option periods only. Said right of first to purchase is in addition to lessee option to purchase realty for $100,000.00 during base 5 year term of the lease and during both of the option to renew periods as set out in paragraphs 17B and 17D of their lease.

17D. A further option is granted to the Lessee for an additional five (5) year term provided that the Notice to Exercise said option is communicated to the Lessors no later than August 1, 1987. The option to purchase the real estate for $100,000.00 shall run with the option to renew the lease. The rent for the option period shall be SIX HUNDRED AND FIFTY AND NO/100 ($650.00) per month."

We agree with the circuit court's express finding that these paragraphs clearly and unambiguously give Albert Corp. the option to purchase the property beyond the base period of the lease. Under the above provisions, Albert Corp. may exercise his right to extend the

five-year base period of the lease for two additional five-year terms by exercising the right during two "option to renew periods," one running until 90 days prior to the expiration of the base period of the lease and the second running until 90 days prior to the end of the first renewal term. As stated three times in the above paragraphs, during both of these option to renew periods, Albert Corp. may exercise its option to purchase the property.

The Chas further argued that material terms were missing from the Albert Corp./Roth option contract which must be present to grant the remedy of specific performance. Specifically, the Chas assert that the contract contains only the description of the real estate and the purchase price and omits terms regarding the proration of taxes, the payment of closing costs, the submission of documents such as an affidavit of title and title insurance, and specification of the type of deed to be conveyed.

■ It is axiomatic that a prerequisite to specific performance relief is the existence of a valid, binding, complete and definite contract. (*Intini v. Marino* (1983), 112 Ill. App. 3d 252, 445 N.E.2d 460.) The law requires a greater degree of specificity regarding the essential terms of a contract when a party seeks specific performance of a contract than for other purposes. (*Cinman v. Reliance Federal Savings & Loan Association* (1987), 155 Ill. App. 3d 417, 423, 508 N.E.2d 239, 244.) Specific performance is not available where there is not a clear and precise understanding of the terms of the contract. *Cinman*, 155 Ill. App. 3d at 423-24, 508 N.E.2d at 244.

■ It is not necessary that the contract indicate whether the property is to be conveyed by a warranty or quitclaim deed or that the contract provide for every collateral matter or future contingency that may arise in the transaction. (*Welsh v. Jakstas* (1948), 401 Ill. 288, 294-95, 82 N.E.2d 53, 57.) A contract is definite and certain where the option provisions in the lease gave the lessee the right to buy the property at a fixed price within a certain time. (*Bonde v. Weber* (1955), 6 Ill. 2d 365, 128 N.E.2d 883.) Terms and conditions of sale, including provisions for the apportionment of taxes, for the type of warranty deed, and closing date, are nonessential and can be supplied by implication. (*Kane v. McDermott* (1989), 191 Ill. App. 3d 212, 547 N.E.2d 708.) The apportionment of taxes can be provided by custom, and it can be implied that a warranty deed was intended, and that the law will imply performance within a reasonable time. *Kane*, 191 Ill. App. 3d at 218-19, 547 N.E.2d at 712-13.

■ We find the Albert Corp./Roth option contract is sufficiently definite for specific performance relief. The omission of terms regard-

ing the proration of taxes, specifications as to closing costs and other closing matters, and indications as to the type of deed to be conveyed are nonessential matters which may be implied from the circumstances or from custom.

The cases cited to us by the Chas, *Cinman* (155 Ill. App. 3d 417, 508 N.E.2d 239) and *Pesovic v. Pesovic* (1973), 10 Ill. App. 3d 708, 295 N.E.2d 261, do not dictate a different result. The court in *Cinman* found a letter did not give rise to an enforceable contract primarily because it concluded that other correspondence established the letter constituted mere negotiations between the parties. In its further finding that the letter was not clear and definite as to material terms to warrant specific performance, the court indicated not only that the letter made no reference to responsibilities regarding existing tenancies or utilities, taxes or insurance, but that the letter did not make provisions for the details of a lease and mortgage even though the primary reason for the sale of the building was for the seller to raise capital by converting the building to cash and then leasing the building from the purchaser. In *Pesovic*, the writings found to be too uncertain and indefinite to establish a specifically enforceable contract to convey land did not identify the real estate to be conveyed, and the owner's written statements were found by the court to do nothing more than express his heartfelt desires.

In any event, the Chas lack standing to object to the Albert Corp./Roth contract. In order to have standing to sue, a plaintiff must allege a direct injury to his rights and not merely that he will suffer in some indefinite way. (*Chicago Park District v. City of Chicago* (1984), 127 Ill. App. 3d 215, 218, 468 N.E.2d 1261, 1263; *Dolnick v. Redmond* (1972), 4 Ill. App. 3d 1037, 1039, 283 N.E.2d 113, 115.) Further, only a party to the contract or those in privity with a party may sue on the contract (*Dale v. Groebe & Co.* (1981), 103 Ill. App. 3d 649, 653, 431 N.E.2d 1107, 1111), except that a third-party beneficiary may sue on a contract made for his benefit. (*Sabath v. Mansfield* (1978), 60 Ill. App. 3d 1008, 1016, 377 N.E.2d 161, 168; *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 257, 178 N.E.2d 498, 501.) The Chas were not a party to the Albert Corp./Roth contract. The mere relationship that the Chas had with Roth does not confer privity of contract on the Chas as a stranger to the Albert Corp./Roth contract where the contract was obviously not made for their benefit. (See *Iser Electric Co. v. Ingran Construction Co.* (1977), 48 Ill. App. 3d 110, 113, 362 N.E.2d 771, 774.) A party claiming to be a third-party beneficiary to the contract must clearly show that such benefit was not purely incidental but that the contract was made for his di-

rect benefit. (*Sabath*, 60 Ill. App. 3d at 1016, 377 N.E.2d at 169; *Carson Pirie Scott*, 346 Ill. at 257, 178 N.E. at 501.) The Chas never showed that the Albert Corp./Roth contract was made for their benefit nor did they ever claim to be third-party beneficiaries to the contract; thus, the Chas lack standing to object to the Albert Corp./Roth contract.

Additionally, the Chas further argue that specific performance should not have been granted because no evidence was introduced at trial to show White Hen remained in a performing condition under the Albert Corp./White Hen contract or that Albert Corp. remained in a performing condition to complete the purchase under the Albert Corp./Roth option contract. The Chas assert that no evidence exists of the satisfaction of contractual conditions to the Albert Corp./White Hen contract, including a soil test, borings, a survey conforming to a sketch, satisfactory utilities, appropriate zoning, and the absence of building restrictions. They further point to evidence that White Hen had demanded four months prior to this litigation the return of the $100,000 escrow funds which were to be used as purchase money under both contracts.

■■ ■ Contrary to the Chas' assertions, White Hen's Midwest regional real estate manager testified at trial that these conditions were complied with and that White Hen was ready to proceed with the closing until it was informed of the other contractual claim against the property. Furthermore, there is no indication in the record that either Albert Corp. or White Hen was not willing to perform or could not perform the conditions of their respective contracts. In fact, the December 3, 1986, letter from White Hen demanding the return of the escrow funds states that White Hen would redeposit the funds once the escrow instructions had been executed. It has been held that where a purchaser in a real estate sales contract has made every effort to carry out the terms of the contract and has sought to perform the contractual terms but has failed through the fault of the seller, specific performance of the contract will be granted. *Kovacs v. Krol* (1944), 385 Ill. 593, 597-99, 53 N.E.2d 456, 458.

It is within the circuit court's discretion to determine whether specific performance of a contract will be granted (*Kane*, 191 Ill. App. 3d at 217, 547 N.E.2d at 711). On appeal, the circuit court's decision will not be disturbed unless it is found to be contrary to the manifest weight of the evidence and an abuse of discretion. (*Lannon v. Lamps* (1980), 80 Ill. App. 3d 318, 324, 399 N.E.2d 712, 715.) We hold that the circuit court did not abuse its discretion and that its finding was not contrary to the manifest weight of the evidence.

██ Fourth, the Chas contend that White Hen lacks standing to bring an action to enforce the contracts. The Chas argued that the Albert Corp./White Hen contract violated a lease provision prohibiting assignment of the leasehold. This argument mistakenly assumes that White Hen must rely on an assignment of Albert Corp.'s interest in the option contract for its standing. (See *Espadron v. Davis* (1944), 385 Ill. 304, 52 N.E.2d 716 (an assignee of a contract to purchase realty may enforce specific performance).) As a party to the Albert Corp./White Hen contract, White Hen clearly had standing to bring suit to enforce the Albert Corp./White Hen contract. Albert Corp., in turn, clearly had standing as a party to the Albert Corp./Roth option contract to bring an action to enforce that contract. Also, Albert Corp. admitted the allegations of White Hen's complaint and filed a similar cross-claim against Roth. Moreover, the nonassignability clause to which the Chas refer does not prohibit the lessee from transferring the property after the lessee acquires the property through the exercise of the option. Rather, the clause prohibits the assignment of the lessee's leasehold interest in the property.

Accordingly, because the Chas have not raised any meritorious contentions which would require reversal of the circuit court's decision to grant specific performance, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MANNING, P.J., and CAMPBELL, J., concur.