Robert B. KAPLAN, Plaintiff–Appellant,

v.

SHURE BROTHERS, INC., an Illinois corporation, Arnold Weinberg, of Katz Randall & Weinberg, and Katz Randall & Weinberg, Defendants–Appellees.

No. 97–2768.

United States Court of Appeals, Seventh Circuit.

Argued April 23, 1998.

Decided Aug. 11, 1998.

Sidney Margolis (argued), Chicago, IL, for Plaintiff–Appellant.

William J. Anaya (argued), Johnson & Bell, Chicago, IL, for Defendant–Appellee Shure Brothers, Inc.

Terry D. Weissman (argued), Kendra J. Panek, Neal, Gerber & Eisenberg, Chicago, IL, for Defendants–Appellees Arnold Weinberg, Katz Randall & Weinberg.

Before BAUER, FLAUM and EVANS, Circuit Judges.

BAUER, Circuit Judge.

In 1996, plaintiff/appellant Robert Kaplan brought this case against Shure Brothers, Inc., attorney Arnold Weinberg, and the law firm of Katz Randall & Weinberg. Kaplan alleged that Shure breached the warranties contained in a land sale contract and that Weinberg and his firm had committed malpractice in connection with the contract. The district court granted the defendants' motions to dismiss, and Kaplan appealed. As discussed below, we find that the district court correctly dismissed Kaplan's claims against Weinberg and the firm but incorrect-

ly dismissed his claims against Shure, and we therefore affirm in part and reverse in part.

## BACKGROUND

The following allegations are contained in the appellant's Second Amended Complaint and are taken as true for purposes of our review. On July 14, 1987, Shure Brothers Inc. ("Shure") entered into an agreement to sell a parcel of land at 3635 West Touhy Avenue in Lincolnwood, Illinois, to RBK Furniture, Inc. ("RBK") for $2,875,000. In this real estate purchase agreement ("the agreement"), Shure made a number of representations regarding the land, including the fact that Shure had good and marketable title to the land, that as of the closing there would be no outstanding obligations or liabilities against the land, and that the land had never been used as a landfill or waste dump and did not contain any hazardous wastes. The agreement stated that Shure's representations and warranties would survive the closing and that RBK would have a right to damages or other remedies in the event Shure breached any of its promises. Additionally, the agreement stated that it was binding on "all of the parties hereto and their respective successors and assigns." The sale of the land closed on December 2, 1987, with a trust ("the Trust"), in which Robert Kaplan ("Kaplan") was the sole beneficiary, acquiring title.

American National Bank and Trust Company of Chicago ("ANB") financed the purchase by the Trust and also served as its trustee. After the purchase had been completed, the Trust leased the land to RBK, which opened a retail furniture showroom and warehouse on the site. In April 1988, The Fidelity Mutual Life Insurance Company ("Fidelity") agreed to lend $4,000,000 to the Trust to refinance the ANB loan and to enable renovations to be made to the site. To help secure this loan, Kaplan executed a guaranty which provided that he would be personally liable for 25 percent of the outstanding principal. At some point, the Trust defaulted on its obligations under the mort-gage, prompting Fidelity to file suit in the Northern District of Illinois on September 23, 1992. In 1994, the court entered judgment against Kaplan with respect to his guaranty, and he paid Fidelity $1,107,238.85.

At about the same time that Fidelity filed suit against it, the Trust entered into an option-to-purchase agreement with Wal–Mart Stores, Inc. ("Wal–Mart") for the land in May 1992. Pursuant to the agreement, Wal–Mart conducted an environmental investigation of the land. When this investigation unearthed contamination, Wal–Mart elected not to proceed with the purchase of the land. Things went from bad to worse in December 1994 when Illinois Tool Works ("Illinois Tool"), the owner of an adjacent parcel of land, filed suit against RBK (and, via an amended complaint, Kaplan as well). Illinois Tool alleged that its property was contaminated with hazardous substances released or threatened to be released from RBK's land. After some legal wrangling and the addition of other parties, this litigation, which is separate and distinct from the present case, settled.

Before the Trust purchased the land, Kaplan contacted Arnold Weinberg ("Weinberg") of the law firm of Katz Randall & Weinberg ("KR & W" or "the firm") to represent him during the deal. Weinberg also represented Kaplan (and presumably the Trust and RBK) with regard to ANB's financing of the purchase in 1987, Fidelity's refinancing of the ANB loan and financing of construction in 1988, the dealings with Wal–Mart in 1992 and 1993, and the litigation involving Fidelity and Illinois Tool in 1992 and 1993. After originally filing suit in February 1996, Kaplan filed a Second Amended Complaint on September 25, 1996, naming Shure, Weinberg, KR & W and Tom Pado, an engineer who had conducted an environmental inspection of the land prior to RBK's purchasing it. This complaint was dismissed by the district court[1] on February 14, 1997, and Kaplan filed a timely notice of appeal on March 14, 1997.

---

1. This case was originally assigned to Judge Paul Plunkett, who ruled on the defendants' first motion to dismiss (and Kaplan's motion to reconsid-er). Judge Plunkett thereafter was absent from the bench due to illness, and Judge Wayne Andersen ruled on the second motion to dismiss.

## ANALYSIS

### I. Jurisdiction

■ Before we can consider the appellant's contentions, we must address some jurisdictional concerns that have arisen. In his brief, Kaplan cites 28 U.S.C. § 1291 as a basis for jurisdiction in this court, stating that he is seeking review of a final judgment entered by the district court. However, we are unable to find a copy of any judgment in the record. Pursuant to Fed.R.Civ.P. 58, the clerk of the court, "upon a decision by the court . . . that all relief should be denied . . . shall forthwith prepare, sign, and enter the judgment without awaiting any direction by the court. . . . Every judgment shall be set forth on a separate document." While the district court did state in several minute orders that it was dismissing Kaplan's entire case, no actual judgment was ever entered.

The fact that no judgment document appears in the record, however, does not deprive us of jurisdiction. The Supreme Court has found that the lack of such a document does not affect appealability when: 1) the district court clearly evidenced its intent that the opinion and order from which an appeal is taken represented the final decision in the case; 2) a judgment of dismissal was recorded in the clerk's docket; and 3) the appellee did not object to the taking of the appeal in the absence of a separate judgment. *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 387–88, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (per curiam). Here, the district court's opinion evidenced the requisite intent, a judgment was entered in the district court's docket (albeit without using the word "judgment"), and the appellees did not raise any objection to this appeal. While the district clerk should be more fastidious about following the mandates of Fed.R.Civ.P. 58, the absence of a judgment does not deprive us of jurisdiction in this case.

■ Another problem exists because the case was purportedly dismissed without prejudice. *See* Rec. Doc. 80. As we have previously stated, "[a]n order dismissing a complaint 'without prejudice' usually is not appealable, because the plaintiff may file an amended complaint." *Farrand v. Lutheran Brotherhood,* 993 F.2d 1253, 1254 (7th Cir. 1993). When it is clear from the order at issue that no amendment is possible, however, the dismissal is considered final and can be appealed. *Id.* In this case, a review of the district court's orders convinces us that the court's dismissal of Kaplan's action on February 14, 1997 is an appealable order. The district court docket reflects that a minute order was entered on June 11, 1997 dismissing Kaplan's case with leave to reinstate before July 11; if no request to reinstate was filed, the dismissal would become final with prejudice. *See* Docket Sheet, Entry 79 (actual document missing). On July 2, another minute order was entered stating that the order of June 11 was amended to state that "[a]ll matters in controversy having been settled, the above-entitled case is dismissed without prejudice." Rec. Doc. 80. When read in conjunction with the district court's opinion of February 14, 1997, which dismissed all of the relevant counts of Kaplan's complaint with prejudice, a clear intent by the court to end the entire case is evidenced. The fact that the minute orders state (probably incorrectly) that the case was dismissed "without prejudice," therefore, does not deprive us of jurisdiction over this appeal.

The parties seem to lack attention to detail when preparing the jurisdictional statements in their briefs. While Weinberg and KR & W attempted to clear up the confusion created by Kaplan's jurisdictional statement, neither they nor the appellant acknowledged that the language dismissing the case was without prejudice and that no formal final judgment had been entered. Jurisdictional statements are not just formalities or refresher courses in Civil Procedure. We anticipate more accurate statements; nevertheless, since we have jurisdiction here, we turn to the merits of Kaplan's appeal.

### II. Dismissal of Kaplan's Complaint

■ In its order of February 14, 1997, the district court dismissed with prejudice all of the counts in Kaplan's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). We review such a dismissal *de novo*, accepting as true all of the facts al-

leged in the complaint and drawing all reasonable inferences from them in the plaintiff's favor. *Gossmeyer . v. McDonald,* 128 F.3d 481, 489 (7th Cir.1997) (citations omitted). We will affirm the dismissal only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* (quoting *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (other citations omitted)).

### 1. Claim against Shure

 In Count I of his Second Amended Complaint, Kaplan alleged that Shure had breached certain warranties and representations contained in the land sale contract. Although he was not a party to the contract, Kaplan asserted two reasons why he could sue Shure for breach of contract: first, that he was in privity of contract with RBK, and second, that he was an intended third-party beneficiary under the contract. In his opening brief on appeal, Kaplan only presented arguments with respect to his privity of contract theory and has therefore waived any challenge to the district court's findings on his third-party beneficiary claim.[2] *See Ricci v. Arlington Heights, Illinois,* 116 F.3d 288, 292 (7th. Cir.1997), *cert. granted,* — U.S. ——, 118 S.Ct. 679, 139 L.Ed.2d 627, *and cert. dismissed,* — U.S. ——, 118 S.Ct. 1693, 140 L.Ed.2d 789 (1998) (argument not raised in brief is waived). Accordingly, we will examine only whether Kaplan was in privity with RBK.

In the agreement with RBK, Shure made a number of representations and warranties regarding the land. These included warranties: 1) that Shure had good, marketable and insurable title to the land; 2) that as of the closing, there would be no obligations or liabilities of any kind for which the purchaser would be liable, including tort liabilities; and 3) that the land was not used by the seller, or to the seller's knowledge, for the production or storage of any hazardous substance; that the land was not used as a landfill or waste

dump; and that the land did not contain any hazardous substances or wastes, as defined by applicable state and federal environmental laws. *See* Second Amended Complaint, Exh. A ¶¶ 9(A)(2), (7), and (12). According to the complaint, hazardous waste is present on the land, leaving Shure in default of its representations.

In the event that any of Shure's representations or warranties were violated, the contract contained a remedy clause. The clause stated, in relevant part:

> If Seller should breach any such covenant, condition, representation or warranty and the same is discovered following the Closing, Purchaser shall be entitled to collect money damages from Seller or enforce any other right or remedy available at law or equity.

*Id.* ¶ 21(A). The agreement also contemplated that RBK might dispose of the land at some point, specifying that "[t]his Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns." *Id.* ¶ 28. It is this last clause which Kaplan asserts gives him a right to sue Shure under the agreement.

 Under Illinois law, a cause of action based on a contract may only be brought by a party to that contract or someone in privity with a party. *White Hen Pantry, Inc. v. Cha,* 214 Ill.App.3d 627, 158 Ill.Dec. 310, 574 N.E.2d 104, 109 (1991).[3] Privity of contract is the "mutual or *successive* relationship to the same rights of property." *Collins Co., Ltd. v. Carboline Co.,* 125 Ill.2d 498, 127 Ill.Dec. 5, 532 N.E.2d 834, 839 (1988) (emphasis in original) (citations omitted). Such a relationship can arise by operation of law, by descent, or by voluntary or involuntary transfer. *Id.* Additionally, privity accompanies a valid assignment of a contract because it puts the assignee in the shoes of the assignor—since the assignor was in privity

---

**2.** Kaplan did mention his third-party beneficiary theory in a footnote, stating that his Second Amended Complaint contained allegations which show that he was in a class of intended beneficiaries contemplated by the contract. This brief discussion is purely conclusory, unsupported by any authority, and insufficient to present the issue on appeal.

**3.** An action may also be brought by a third-party beneficiary, *id.,* but as we have noted, Kaplan failed to adequately present this issue on appeal.

with the other contracting party, the assignee is as well. *Id.* 532 N.E.2d at 839–40.

The district court dismissed Kaplan's claim against Shure because he had "not alleged that he is in privity with RBK." *See* Memorandum Opinion of July 17, 1996 at 10. Specifically, it stated that "[n]othing in Kaplan's Complaint indicates any relationship between him and RBK that might be construed as privity of contract." *Id.* The court upheld its decision on Kaplan's motion to reconsider, reaffirming that "Kaplan has not alleged any facts to show that he 'succeeds' to RBK's rights under the Contract." *See* Memorandum Opinion of September 13, 1996 at 4. After Kaplan had filed his Second Amended Complaint (and Shure again moved to dismiss), the district court refused to consider Kaplan's arguments regarding privity, finding that he had not been given leave to reassert his claim and that, in any event, he had failed to allege anything new. *See* Memorandum Opinion of February 14, 1997 at 5. Finding that the district court misapplied the standard on a motion to dismiss, we reverse.

In the Second Amended Complaint, Kaplan asserts that the land is the sole asset of the Trust and that RBK assigned its entire interest as sole beneficiary of the Trust to Kaplan. In addition, Kaplan states that the Trust is the successor purchaser of the land from RBK, and that he holds the entire beneficial interest in the Trust. *See* Second Amended Complaint ¶¶ 83 and 84. Taking these allegations in a light most favorable to Kaplan, we cannot agree with the district court's decision to dismiss Kaplan's claim. The district court repeatedly stated that Kaplan failed to allege any "facts" showing that he was in privity with RBK. However, facts need not be pled with specificity under our notice-pleading system. *See* Fed. R.Civ.P. 8(a)(2) (requiring only a "short and plain statement of the claim showing that the pleader is entitled to relief"); *Jackson v. Marion County*, 66 F.3d 151, 154 (7th Cir. 1995) (plaintiff need not plead facts; can plead conclusions as long as they give the defendant "at least minimal notice of the claim."). The fact that Kaplan did not plead facts showing that he was in privity with RBK, therefore, does not bar his claim as a matter of law; as long as he put Shure on notice of the nature of his claim, his case can proceed.

 While his allegations with respect to privity are relatively thin, we do not believe that they are fatally so. Kaplan's assertions put Shure on notice that he is claiming to be in privity of contract with RBK—the fact that he did not say this outright is of little consequence. In addition, we cannot say at this time that Kaplan could prove no set of facts consistent with his allegations which would entitle him to relief. As previously noted, this case involves an Illinois land trust. Such trusts are characterized by four distinctive features:

> First, both the legal and equitable title to the res are vested in the trustee, not the beneficiary. Land trusts vest the usual attributes of ownership-the rights of possession and management of the property, as well as the rights to rents and proceeds from the property—in the beneficiary or beneficiaries. Second, this beneficial interest, the bundle of beneficiaries' rights and privileges, is not characterized as a real estate interest, but as a personal property interest. Third, the trustee has no duties or powers other than to execute deeds and mortgages or otherwise to deal with the property as directed by the holder of the power of direction.... Fourth, in land trusts, the power of direction, which is a property interest separable from the beneficial interest, provides the possessor with the ability to direct the trustee in the manner in which he is to deal with the property.

*Estate of Bowgren v. Commissioner of Internal Revenue*, 105 F.3d 1156, 1160–61 (7th Cir.1997) (citations and footnotes omitted). Kaplan alleges that RBK assigned its whole interest in the Trust to him; this assignment would seem to have included RBK's rights in the land purchase agreement. Additionally, as beneficiary of the Trust, Kaplan may well have succeeded to RBK's rights in the agreement by virtue of the flow-through nature of the Trust. The dismissal of his claims at this stage of the litigation was erroneous.

Since we find that Kaplan's complaint sufficiently informs Shure of the nature of the

claim against it and that Kaplan's claim does not, at this stage, fail as a matter of law, we must reverse the district court's dismissal of Kaplan's claim against Shure.

### 2. Claims Against Weinberg and KR & B

In his Second Amended Complaint, Kaplan asserted three counts against Weinberg and KR & W. Count II charged Weinberg and KR & W with negligence stemming from a variety of shortcomings in their representation; Count III alleged that Weinberg and KR & W had breached their fiduciary duties to Kaplan; and Count IV asserted that Weinberg and KR & W were in breach of contract for their failure to competently advise Kaplan. In addition, both Counts II and IV alleged that Kaplan was injured when Weinberg and KR & W failed to have RBK assign the land purchase agreement to either Kaplan or the Trust. The district court dismissed all of Kaplan's claims, finding that they were barred either by the statute of limitations or the statute of repose applicable to attorney malpractice claims. In his opening brief to this court, Kaplan only presented arguments regarding the "failure-to-assign" claims in Counts II and IV. By failing to present arguments with respect his other claims, Kaplan has waived any challenge to their dismissal on appeal. *See Ricci,* 116 F.3d at 291–92. Accordingly, we will only examine the dismissal of Kaplan's failure-to-assign claims.

The district court dismissed Kaplan's failure-to-assign claims because they ran afoul of both the statute of limitations and the statute of repose applicable to attorney malpractice claims under Illinois law. The relevant statute is as follows:

(b) An action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services ... must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought.

(c) Except as provided in subsection (d), an action described in subsection (b) may not be commenced in any event more than 6 years after the date on which the act or omission occurred.

735 ILCS 5/13–214.3(b) and (c).[4] These limits apply, however, only to causes of action accruing on or after January 1, 1991, the effective date of the statute. 735 ILCS 5/13–214.3(f). For causes of action accruing before this date, the applicable statute of limitations is five years and there is no statute of repose. *See Harvey v. Connor,* 85 Ill.App.3d 1061, 41 Ill.Dec. 381, 407 N.E.2d 879, 881 (1st Dist.1980), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2019, 68 L.Ed.2d 326 (1981); 735 ILCS 5/13–205 (formerly Ill.Rev.Stat. ch. 110 ¶ 13–205). The district court determined that Kaplan's failure-to-assign claim accrued after January 1, 1991, and applied the provisions of section 5/13–214.3(b) and (c); on appeal, Kaplan asserts that his claim accrued in 1987, not 1991 (or thereafter), and that the five-year statute of limitations (and no statute of repose) should apply. When Kaplan's claim accrued, therefore, is a threshold issue to which we now turn.

In determining when Kaplan's cause of action accrued in this diversity case, the parties agree that we must apply Illinois law. *See also Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In doing so, we must predict how the Illinois Supreme Court would decide the issue. *Rodman Indus., Inc. v. G & S Mill, Inc.,* 145 F.3d 940, 942–43 (7th Cir.1998) (citation omitted). Since the Illinois Supreme Court has not yet passed on this issue, we examine decisions of the lower state courts to help formulate an answer. *Id.* The Illinois Appellate Court has taken different approaches when determining when a cause of action for legal malpractice accrues. *Barratt v. Goldberg,* 296 Ill.App.3d 252, 230 Ill.Dec. 635, 694 N.E.2d 604, 607 (1st Dist.1998). One line of cases holds that a cause of action accrues at the time the negligent act was committed. *Id.* (citing *Dolce v. Gamberdino,* 60 Ill.App.3d 124, 17 Ill.Dec. 274, 376 N.E.2d 273 (1st

---

**4.** Section 5/13–214.3 was amended by P.A. 89–7, which struck subsection (d) and added a new subsection (g). The Illinois Supreme Court held that P.A. 89–7 was unconstitutional in its entirety in *Best v. Taylor Machine Works,* 179 Ill.2d 367, 228 Ill.Dec. 636, 689 N.E.2d 1057 (1997). These developments did not affect the portions of the statute at issue in this case.

Dist.1978)). A second line of cases holds that a cause of action for legal malpractice does not accrue until the client discovers, or should have discovered, facts establishing the elements of a claim of malpractice. *Id.* (citing *Tucek v. Grant*, 129 Ill.App.3d 236, 84 Ill.Dec. 603, 472 N.E.2d 563 (2d Dist.1984)). Kaplan argues that the former rule should apply and that the district court erred in finding that his claim accrued in 1996 rather than in 1987.

After reviewing the relevant Illinois caselaw, we believe that the Illinois Supreme Court would follow the second line of cases and would find that accrual of a claim of attorney malpractice occurs when the plaintiff knew or should have known of his injury. The idea that a cause of action accrues at the time the negligent act was committed, as illustrated by *Dolce*, has been explicitly rejected by several Illinois courts. In *Goran v. Glieberman*, 276 Ill.App.3d 590, 213 Ill.Dec. 426, 659 N.E.2d 56, 59 (1st Dist. 1995), the Illinois Appellate Court found that the rule in *Dolce* was no longer viable, since it was based on a limited application of the discovery rule which had been expressly rejected by the Illinois Supreme Court.[5] In addition, the court noted that *Dolce* represented a departure from first district precedent and that its accrual rule was counter to public policy. *Goran*, 659 N.E.2d at 59. The rule in *Dolce* was similarly rejected in *Goodman v. Harbor Market, Ltd.*, 278 Ill.App.3d 684, 215 Ill.Dec. 263, 663 N.E.2d 13, 16–17 (1st Dist.1995), *appeal denied sub nom. Goodman v. Goodman*, 168 Ill.2d 589, 219 Ill.Dec. 563, 671 N.E.2d 730 (1996). In both cases, the court adopted the second approach to accrual: "a cause of action for legal malpractice accrues when the plaintiff knows or reasonably should know of his injury and that it was caused wrongfully." *Goran*, 659 N.E.2d at 60; *Goodman*, 663 N.E.2d at 18. Other Illinois courts have held similarly, *see Kohler v. Woollen, Brown & Hawkins*, 15 Ill.App.3d 455, 304 N.E.2d 677, 681 (4th Dist. 1973) (rejecting notion that cause of action

accrues at time negligent act is committed and adopting the "knew or should have known" rule); *Tucek*, 472 N.E.2d at 566–67 (rejecting rule in *Dolce* and following "knew or should have known" rule), and we believe that this approach is the one that would be adopted by the Illinois Supreme Court.

Given our view of Illinois law, the district court was correct in concluding that Kaplan's claim accrued in 1996, not 1987, and that the two-year statute of limitations and six-year statute of repose applied to his claim. In his brief, Kaplan admits that "[t]he effect of the District Court's ruling of July 17, 1996 was to put Kaplan on notice that Weinberg and KR & W had committed malpractice against Kaplan by their failure to assign RBK's rights in the Contract to the Trust or to Kaplan in 1987." *See* Appellant's Brief at 20. Similarly, in his Second Amended Complaint, Kaplan alleges that he "knew, or should have known, that the injury to him by Weinberg's and KR & W's failure in 1987 to have RBK Furniture assign the agreement ... was wrongly caused by Weinberg and KR & W when [the district] Court ruled on July 17, 1996 and September 13, 1996." *See* Second Amended Complaint ¶¶ 113 and 133. Since Kaplan discovered his injury in 1996, that is when his claims accrued under Illinois law, and the statute of repose is applicable to this case.

Kaplan asserts, however, that the above-discussed principles apply only with respect to determining when a claim accrues for statute of limitations purposes, not with respect to determining if a statute of repose should apply retroactively to an existing cause of action. *See* Appellant's Brief at 22. In support of this proposition, Kaplan cites *Fetzer v. Wood*, 211 Ill.App.3d 70, 155 Ill.Dec. 626, 569 N.E.2d 1237, 1243 (2d Dist.1991), in which the Illinois Appellate Court considered when a cause of action under the Illinois Survival Act accrued for purposes of applying a modified comparative negligence statute. In its discussion, the court stated that

5. The discovery rule is a type of tolling device applicable to statutes of limitations. As applied in Illinois, it "delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has

been injured and that his injury was wrongfully caused." *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill.2d 240, 198 Ill.Dec. 786, 633 N.E.2d 627, 630–31 (1994).

the discovery rule "does not actually provide for new accrual rules; it instead tolls the running of the statute of limitations, until a plaintiff's 'discovery,' of an *existing* cause of action." *Id.* (emphasis in original). Kaplan's reliance on *Fetzer* is misplaced, however, for several reasons. First, the court's discussion of the discovery rule was dicta, since its determination of when the plaintiff's claim accrued did not depend on that rule. In addition, the circumstances in *Fetzer* are distinguishable from the present case. In *Fetzer*, the date of accrual dictated whether a modified comparative negligence statute would be applicable to a Survival Act claim, whereas in this case the applicability of a statute of repose to a legal malpractice claim is in question. The discussion in *Fetzer* is therefore inapplicable to the instant case.

To the extent that Kaplan is asserting that statutes of repose and statutes of limitations are not one and the same, he is correct. The Illinois Appellate Court has differentiated the two statutes in this manner:

A statute of repose is essentially different from a statute of limitations, in that a limitations statute is procedural, giving a time limit for bringing a cause of action, with the time beginning when the action has ripened or accrued; while a repose statute is a substantive statute, extinguishing any right of bringing the cause of action, regardless of whether it has accrued.

*Highland v. Bracken*, 202 Ill.App.3d 625, 148 Ill.Dec. 104, 560 N.E.2d 406, 411 (4th Dist.), *appeal denied sub· nom. Highland v. Williams*, 135 Ill.2d 556, 151 Ill.Dec. 382, 564 N.E.2d 837 (1990) (citing *Thornton v. Mono Mfg. Co.*, 99 Ill.App.3d 722, 54 Ill.Dec. 657,

425 N.E.2d 522, 525 (2d Dist.1981)). As a general proposition, therefore, Kaplan's assertion that the discovery rule does not apply in determining whether a statute of repose applies to bar a cause of action appears to be true—the time the action accrued is immaterial to the application of a statute of repose. However, the Illinois Legislature's explicit statement that the new statute of repose would apply only to legal malpractice claims accruing after January 1, 1991 overrides such a general proposition, and we cannot ignore the explicit wording of the statute in favor of an abstract principle. The parties did not point us to any Illinois cases which set forth a rule for determining when a cause of action accrues for purposes of applying the statute of repose, and our research has not turned up any.[6] In the absence of any other guidance, we believe that the same rules of accrual which apply to the amended statute of limitations for attorney malpractice apply to the statute of repose. Accordingly, the district court correctly determined that Kaplan's claims accrued in 1996, not in 1987, and that the two-year statute of limitations and the statute of repose applied.

Having determined that the statute of repose applied to Kaplan's claims against Weinberg and KR & W, the district court also correctly held that these claims were barred by the statute of repose. According to its terms, the statute prohibits the commencement of a suit "more than 6 years after the date on which the act or omission occurred." According to the allegations in Kaplan's complaint, "[i]n 1987, Weinberg and KR & W negligently breached their duty to represent Kaplan competently ... by failing to have RBK furniture assign to ... Kaplan the agreement of purchase." *See* Second Amended Complaint ¶ 102; *id.* ¶ 132 ( "Wein-

---

6. In his brief, Kaplan also argues that his claim accrued in 1987, when all of the elements of a cause of action for malpractice were present, pursuant to *West Am. Ins. Co. v. Sal E. Lobianco & Son Co., Inc.*, 69 Ill.2d 126, 12 Ill.Dec. 893, 370 N.E.2d 804, 806 (1977). That case, however, dealt with the accrual of a personal injury tort, not a legal malpractice claim. Kaplan also cited *Garcia v. Pinto*, 258 Ill.App.3d 22, 195 Ill.Dec. 795, 629 N.E.2d 103, 105 (Ill.App. 1st Dist.1993), *appeal denied*, 163 Ill.2d 554, 212 Ill.Dec. 418, 657 N.E.2d 619 (1995), for this proposition. In *Garcia*, however, the court stat-

ed that a cause of action for legal malpractice *arises* when the attorney breaches his duty to act skillfully and diligently, not that the cause of action *accrued* at that time. The terms "accrued" and "arises" do not appear to be synonymous under Illinois law, and therefore a cause of action can "arise" before it "accrues." *See Highland*, 148 Ill.Dec. 104, 560 N.E.2d at 409 (noting difference between date of injury and date of accrual). In this case, while Kaplan's claim may have arisen in 1987 (a subject on which we make no judgment), it did not accrue until Kaplan discovered his injury in 1996.

berg's and KR & W's failure in 1987 to have RBK Furniture assign the agreement of purchase . . . ."). Since the failure-to-assign took place in 1987, and Kaplan did not file suit until 1996, the claims are barred by the six-year statute of repose.

Kaplan argues, however, that applying the statute of repose to his case would be impermissible because it would be retroactive. This argument has been considered and rejected by the Illinois Appellate Court:

[Appellant] also claims that the statute is unconstitutional because it is retroactive in its effect and would bar a cause of action before it ripened. We disagree. The period of repose gives effect to a policy different from that advanced by a period of limitations; the purpose of the statute of repose is to impose a cap on the applicability of the discovery rule so that the outer limit terminates the possibility of liability after a definite period of time, regardless of a potential plaintiff's lack of knowledge of his cause of action. . . . Because the statute of repose shortens the limitations period, a person whose cause of action arose before the effective date of the statute will be given a reasonable period of time in which to bring his action. . . . The fact that a repose provision may, in a particular instance, bar an action before it is discovered is an accidental rather than necessary consequence.

*Serafin v. Seith,* 284 Ill.App.3d 577, 219 Ill. Dec. 794, 672 N.E.2d 302, 310 (1st Dist.1996), *appeal denied,* 172 Ill.2d 568, 223 Ill.Dec. 201, 679 N.E.2d 386 (1997) (internal citations omitted). The Illinois Supreme Court has stated that causes of action stemming from occurrences prior to the effective date of the statute which accrue at a later time are not terminated by a statute of repose on its effective date. *Costello v. Unarco Indus., Inc.,* 111 Ill.2d 476, 95 Ill.Dec. 822, 490 N.E.2d 675, 678 (1986). Rather, a "rule of reasonableness" applies, *id.*; that is, the statute of repose will apply retroactively only if the plaintiff had a "reasonable period of time after the amendment's effective date in which to file an action." *Goodman,* 663 N.E.2d at 19 (citing *Phillips Products Co., Inc. v. Industrial Comm'n,* 94 Ill.2d 200, 68 Ill.Dec.

500, 446 N.E.2d 234, 236 (1983)). This is the precise situation before this court; the events underlying Kaplan's claim occurred in 1987, but the claim itself did not accrue until 1996. Accordingly, we look to see whether Kaplan filed his failure-to-assign claim within a "reasonable time" of the effective date of the statute of repose.

To determine whether Kaplan's claim was filed within a "reasonable time," we examine whether the law as amended afforded him a reasonable time to file his claim "between the amendment's effective date and the date when the claim would be barred under the terms of the amendment." *Phillips,* 446 N.E.2d at 236. If the amended statute allowed a reasonable time for a claim to be filed, but the claimant failed to do so, then the claim is barred. *Id.* While this rule has been shaped with statutes of limitations in mind, it also applies to statutes of repose. *Goodman,* 663 N.E.2d at 19. What constitutes a "reasonable time" is not etched in stone, but periods of less than one year from the effective date of the statute have been found to be acceptable. *Phillips,* 446 N.E.2d at 236 (one year was reasonable time) (citing *Anderson v. Wagner,* 79 Ill.2d 295, 37 Ill.Dec. 558, 402 N.E.2d 560, 572 (1979) (eight months reasonable) and *Carlin v. Peerless Gaslight Co.,* 283 Ill. 142, 119 N.E. 66 (1918) (nine months reasonable)). In this case, the failure-to-assign allegedly occurred in 1987, four years before the statute of repose came into effect. Accordingly, Kaplan had two years after the statute of repose was effective to discover his injury and file suit before the statute operated to cut off his right to sue. Since Illinois courts have held that eight months is a reasonable time, we agree with the district court that two years or more is certainly reasonable. Accordingly, the district court correctly found that Kaplan did not file his suit within a reasonable time after the statute of repose went into effect, and "retroactive" application of the statute is not proscribed in this case.

In summary, we agree with the district court's conclusion that the statute of repose applied to Kaplan's failure-to-assign claim and that he failed to file his suit within a reasonable time after the statute came into

effect. Accordingly, his failure-to-assign claim was barred as a matter of law, and the district court did not err in dismissing it with prejudice. Since we have determined that Kaplan's failure-to-assign claim against Weinberg and KR & W is barred by the statute of repose, we need not consider the appellees' alternative argument (and the district court's alternative holding) that the claim was also barred by the statute of limitations.

## CONCLUSION

The district court erroneously determined that Kaplan's complaint failed to allege a cause of action against Shure. However, it correctly found that Kaplan's claims against Weinberg and KR & W accrued after January 1, 1991, and were therefore barred by the applicable statute of repose. Accordingly, we AFFIRM the dismissal of Kaplan's claims against Weinberg and Katz Randall & Weinberg, but REVERSE the dismissal of his claim against Shure and REMAND for further proceedings. Circuit Rule 36 shall apply on remand.