2022 IL App (2d) 210785
No. 2-21-0785
Opinion filed December 1, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| IMOTORSPORTS, INC., | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 21-CH-71 |
| | ) | |
| VANDERHALL MOTOR WORKS, INC., | ) | Honorable |
| | ) | Bonnie M. Wheaton, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Presiding Justice Brennan and Justice Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, iMotorsports, Inc., filed in the circuit court of Du Page County a three-count first amended complaint against defendant, Vanderhall Motor Works, Inc. The counts alleged breach of contract, breach of implied-in-fact contract, and a violation of the Motor Vehicle Franchise Act (Act) (815 ILCS 710/1 *et seq.* (West 2020)). Defendant moved to dismiss the complaint, pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)). The trial court granted defendant's motion and dismissed the complaint in its entirety, with prejudice. On appeal, plaintiff argues that the trial court erred in dismissing the complaint. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3     Plaintiff's first amended complaint alleged in relevant part as follows. Plaintiff, a corporation organized and existing under the laws of Illinois with its principal place of business located in Elmhurst, Du Page County, Illinois, operates a motor vehicle dealership. Defendant is a corporation organized and existing under the laws of Utah with its principal place of business located in Provo, Utah. Defendant manufactures motor vehicles under the Vanderhall name and distributes them to dealers throughout the country. On February 7, 2018, plaintiff and defendant entered into a written franchise agreement (Agreement). The Agreement granted plaintiff the rights to sell and service Vanderhall products from an authorized retail location in Elmhurst. Paragraph 2(f) of the Agreement provided as follows:

> "(f) Nonexclusive. The rights granted herein are nonexclusive. VANDERHALL reserves the right to appoint additional dealers of any or all of VANDERHALL Products and Related Products at any time pursuant to VANDERHALL's marketing programs and policies. However, Vanderhall agrees not to authorize any dealer within 75 miles of dealer's address[.]"

Paragraph 9(f) provided that the Agreement "will terminate on [the] 31st day of October 2019." Since the execution of the Agreement, plaintiff has sold and serviced Vanderhall products from its authorized retail location in Elmhurst. Defendant has never given notice to plaintiff of its intent to terminate, cancel, not renew, or otherwise modify the parties' Agreement.

¶ 4     Notwithstanding the stated expiration date in the Agreement, the parties' business relationship continued after October 31, 2019. To this end, defendant continued to provide plaintiff with new motor vehicle products, reimburse plaintiff for warranty service, provide plaintiff with trademarked material and signage, and list plaintiff as a Vanderhall dealer on its website. Plaintiff

continued to sell and service Vanderhall motor vehicles, advertise new Vanderhall motor vehicles for sale, display Vanderhall trademarks, and receive new Vanderhall products from defendant.

¶ 5 On or about February 1, 2021, defendant appointed a new Vanderhall motor vehicle dealer in Hickory Hills, Illinois, approximately 16 miles from plaintiff's location in Elmhurst. Plaintiff demanded that defendant cease and desist authorization of the Vanderhall dealer in Hickory Hills. Defendant refused and provided the Hickory Hills dealer with new Vanderhall motor vehicle products.

¶ 6 On March 4, 2021, plaintiff filed in the circuit court of Du Page County a two-count complaint for injunctive and other relief. On defendant's motion, the trial court dismissed the complaint, pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)), but granted plaintiff leave to file an amended complaint.

¶ 7 On September 10, 2021, plaintiff filed its first amended complaint for injunctive and other relief. The first amended complaint consisted of three counts. Count I asserted a cause of action for breach of contract. Specifically, plaintiff alleged that defendant's authorization of a Vanderhall dealership in Hickory Hills constituted a breach of paragraph 2(f) of the Agreement and that plaintiff sustained damages as a result of the breach. Count II alleged that, if the Agreement is found to have expired in 2019, the parties' continued business relationship resulted in the formation of an implied-in-fact contract. Count II further alleged that the terms of the implied-in-fact contract consisted of those in the Agreement, that defendant breached the implied-in-fact contract by authorizing the Vanderhall dealership in Hickory Hills, which is less than 75 miles from plaintiff's authorized retail location, and that plaintiff sustained damages as a result of the breach. Count III alleged that defendant's action of "openly and intentionally" breaching the Agreement or the implied-in-fact contract was done in bad faith and was unconscionable, thereby

violating section 4(b) of the Act (815 ILCS 710/4(b) (West 2020) (providing that it is a violation of the Act for a manufacturer "to engage in any action with respect to a franchise which is arbitrary, in bad faith or unconscionable and which causes damage to any of the parties or to the public")). Plaintiff attached a copy of the Agreement to the amended complaint.

¶ 8    On October 20, 2021, defendant filed a motion to dismiss plaintiff's first amended complaint, pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)). Defendant argued that plaintiff could not assert a breach-of-contract claim based on conduct that occurred after the parties' contract automatically expired. Defendant further argued that plaintiff failed to allege a viable claim for breach of an implied contract. In this regard, defendant asserted that its alleged conduct in authorizing another Vanderhall dealer within plaintiff's purported exclusive area demonstrated its intent *not* to be bound by the 75-mile limitation in the expired contract. Finally, defendant contended that, in the absence of a valid written or implied contract, there could be no breach, so it could not have acted unfairly or in bad faith or violated the Act.

¶ 9    A hearing on defendant's motion to dismiss plaintiff's first amended complaint was held on December 3, 2021. Following argument by the parties, the trial court granted defendant's motion to dismiss. The court acknowledged authority requiring a manufacturer to "send a letter to the dealer" if a manufacturer intends to terminate, not renew, or substantially change or modify a franchise agreement. See *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611; 815 ILCS 710/4(d)(6) (West 2020). However, the court found that the contract at issue "was not terminated, it was not not renewed." Rather, it expired by its own terms. Moreover, the court noted that, under the Act, "the area of exclusivity" for Du Page County, which has a population greater than 300,000 persons, is the area within a radius of 10 miles from plaintiff's authorized retail location. See 815 ILCS 710/2(q), 4(e)(8) (West 2020). Since the Hickory Hills

dealership was "much further" from plaintiff's facility than the 10-mile area of exclusivity provided for by the Act, the court reasoned, authorizing another Vanderhall dealer 16 miles away did not constitute a substantial modification. On December 6, 2021, the court entered a written order in conformity with its oral pronouncement and dismissed plaintiff's complaint in its entirety, with prejudice. On December 30, 2021, plaintiff filed a notice of appeal.

¶ 10                                   II. ANALYSIS

¶ 11     On appeal, plaintiff argues that the trial court erred in granting defendant's section 2-615 motion and dismissing with prejudice its first amended complaint. According to plaintiff, the first amended complaint stated a viable cause of action for either breach of an express contract or breach of a contract implied in fact and for a violation of section 4(b) of the Act (815 ILCS 710/4(b) (West 2020)).

¶ 12                              A. Standard of Review

¶ 13     A dismissal motion filed under section 2-615 of the Code challenges the legal sufficiency of the complaint. *Wilson v. County of Cook*, 2012 IL 112026, ¶ 14. In ruling on a section 2-615 motion, all well-pleaded facts and all reasonable inferences that may be drawn from those facts are accepted as true. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). However, a plaintiff may not rely on mere conclusions of law or fact unsupported by specific factual allegations. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). The critical inquiry in reviewing a section 2-615 motion is whether the allegations in the complaint, construed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 16. Thus, only those facts apparent from the face of the pleadings, documents attached to the complaint (including exhibits, depositions, and affidavits), matters of which the court can take

judicial notice, and judicial admissions in the record may be considered in ruling on a section 2-615 motion. *Bruss v. Przybylo*, 385 Ill. App. 3d 399, 405 (2008); *Brock v. Anderson Road Ass'n*, 287 Ill. App. 3d 16, 21 (1997). Where allegations made in the body of the complaint conflict with facts disclosed in the exhibits, the exhibits control and the allegations will not be taken as true in evaluating the sufficiency of the complaint. *Bajwa v. Metropolitan Life Insurance Co.*, 208 Ill. 2d 414, 430-31 (2004). We review *de novo* a trial court order granting a section 2-615 motion. *Northwestern Illinois Area Agency on Aging v. Basta*, 2022 IL App (2d) 210234, ¶ 33. Further, we may affirm the trial court's judgment on any grounds found in the record, regardless of the court's reasoning. *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 17.

¶ 14   This appeal also involves issues of statutory construction and contract interpretation. The primary objective of statutory construction is to ascertain and give effect to the intent of the legislature. *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 56. The most reliable indicator of legislative intent is the language of the statute itself, given its plain and ordinary meaning. *State Bank of Cherry*, 2013 IL 113836, ¶ 56. If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory construction. *State Bank of Cherry*, 2013 IL 113836, ¶ 56. A court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent. *State Bank of Cherry*, 2013 IL 113836, ¶ 56. Similarly, in interpreting a contract, the primary objective is to give effect to the intent of the parties. *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 38. To do this, a court will first look to the language of the contract and view the document as a whole. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). If the words in the contract are clear and unambiguous, they must be given their plain and ordinary meaning and the contract must be

enforced as written. *Thompson*, 241 Ill. 2d at 441; *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). Statutory construction and contract interpretation are questions of law, which we review *de novo*. *In re Marriage of Scarp*, 2022 IL App (1st) 210711, ¶ 11. With these principles in mind, we address plaintiff's arguments *seriatim*.

¶ 15                              B. Count I—Breach of Contract

¶ 16     Plaintiff first argues that the trial court erred in dismissing with prejudice count I of its first amended complaint, because that count states a cause of action for breach of an express contract. In this regard, plaintiff correctly notes that the elements of a cause of action for breach of contract are the existence of a valid and enforceable contract, performance by the plaintiff, breach of the contract by the defendant, and resultant damages or injury to the plaintiff. *Razor Capital v. Antaal*, 2012 IL App (2d) 110904, ¶ 30. According to plaintiff, the allegations in count I of the first amended complaint were sufficient to establish each of these elements. Specifically, count I asserted the existence of a valid and enforceable agreement, a provision in that agreement (paragraph 2(f)) that prohibited defendant from authorizing any other Vanderhall dealer within 75 miles of plaintiff's Elmhurst location, defendant's breach of paragraph 2(f) by authorizing a competing dealership just 16 miles from plaintiff's Elmhurst location, plaintiff's performance under the contract, and damages resulting from the breach. As such, plaintiff contends that the trial court erred as a matter of law in dismissing with prejudice count I of its first amended complaint.

¶ 17     Defendant responds that plaintiff's breach-of-contract claim fails because the claim seeks to enforce a contract long after it terminated by its express terms. In this regard, defendant notes that, when it appointed the dealership in Hickory Hills, the Agreement had been expired for well over a year. Defendant argues that, in the absence of a valid and enforceable agreement, plaintiff cannot assert a viable claim for breach of contract.

¶ 18    We agree with defendant. Plaintiff failed to establish the first element of a breach claim—the existence of a valid and enforceable contract. The Agreement, by its own terms, expired on October 31, 2019. As such, neither the Agreement nor any provision thereof could have been the basis of the parties' business relationship in February 2021, when defendant allegedly appointed the dealership in Hickory Hills. See *Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc.*, 307 F.3d 601, 604 (7th Cir. 2002). Moreover, plaintiff does not identify any subsequent written or oral contract between the parties that contained an exclusivity provision. To be sure, the parties continued to conduct business after October 31, 2019. However, there is no evidence that the parties' continuing relationship included a promise to preserve the 75-mile exclusivity provision. See *Clark Investments, Inc. v. Airstream, Inc.*, 399 Ill. App. 3d 209, 213 (2010) (holding that, where contract that contained an exclusive sales territory expired by its own terms, contract could not be reenacted by a finding that the parties' subsequent contract was void). Without a valid and enforceable contract, plaintiff cannot assert a claim for breach of contract. *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 199 (1999). Thus, the trial court properly dismissed count I of plaintiff's first amended complaint.

¶ 19    Plaintiff acknowledges that the Agreement included an expiration date of October 31, 2019. Nevertheless, plaintiff contends that the Act renders the Agreement's expiration date "unenforceable as a matter of law." In support of this claim, plaintiff directs us to section 4(d)(6) of the Act (815 ILCS 710/4(d)(6) (West 2020)), which provides in relevant part as follows:

> "(d) It shall be deemed a violation for a manufacturer, a distributor, a wholesaler, a distributor branch or division, or officer, agent or other representative thereof:

> * * *

(6) to cancel or terminate the franchise or selling agreement of a motor vehicle dealer without good cause and without giving notice as hereinafter provided; to fail or refuse to extend the franchise or selling agreement of a motor vehicle dealer upon its expiration without good cause and without giving notice as hereinafter provided; or, to offer a renewal, replacement or succeeding franchise or selling agreement containing terms and provisions the effect of which is to substantially change or modify the sales and service obligations or capital requirements of the motor vehicle dealer arbitrarily and without good cause and without giving notice as hereinafter provided notwithstanding any term or provision of a franchise or selling agreement.

(A) If a manufacturer, distributor, wholesaler, distributor branch or division, factory branch or division or wholesale branch or division intends to cancel or terminate a franchise or selling agreement or intends not to extend or renew a franchise or selling agreement on its expiration, it shall send a letter by certified mail, return receipt requested, to the affected franchisee at least 60 days before the effective date of the proposed action ***.

* * *

(B) If a manufacturer, distributor, wholesaler, distributor branch or division, factory branch or division or wholesale branch or division intends to change substantially or modify the sales and service obligations or capital requirements of a motor vehicle dealer as a condition to extending or renewing the existing franchise or selling agreement of such motor vehicle

dealer, it shall send a letter by certified mail, return receipt requested, to the affected franchisee at least 60 days before the date of expiration of the franchise or selling agreement." 815 ILCS 710/4(d)(6) (West 2020). The statute further provides that "[e]ach notice of proposed action shall include a detailed statement setting forth the specific grounds" for the proposed cancellation, termination, refusal to extend, refusal to renew, or other proposed action "and shall state that the dealer has only 30 days from receipt of the notice to file with the Motor Vehicle Review Board a written protest against the proposed action." 815 ILCS 710/4(d)(6)(A), (B) (West 2020).

¶ 20    Based on the foregoing statutory language, plaintiff argues that, "to invoke" the October 31, 2019, expiration date, defendant was required to give it 60 days' written notice. 815 ILCS 710/4(d)(6)(A), (B) (West 2020); *Crossroads Ford Truck Sales, Inc.*, 2011 IL 111611, ¶ 31 ("If a manufacturer intends to terminate, not renew, or substantially change or modify a franchise agreement, it must send a letter to the dealer at least 60 days before the effective date of the proposed action."). Plaintiff contends that defendant failed to provide the required 60 days' statutory notice and, as a result, the expiration date was unenforceable. See 815 ILCS 710/4(a) (West 2020) (providing that the unfair methods of competition and unfair and deceptive acts or practices listed in section 4 of the Act "are hereby declared to be unlawful"). Plaintiff further argues that, by virtue of a severability clause in the Agreement, the remainder of the contract, including the 75-mile exclusivity provision, survived.

¶ 21    Plaintiff's reliance on section 4(d)(6) is misplaced. A manufacturer is required to give notice under section 4(d)(6)(A) of the Act (815 ILCS 710/4(d)(6)(A) (West 2020)) if it intends (1) to cancel or terminate a franchise or selling agreement or (2) not to extend or renew a franchise or selling agreement. The Act does not define the terms "cancel," "terminate," "extend," or

"renew." In the absence of a statutory definition, a court may consult a dictionary to ascertain the plain and ordinary meaning of a word. *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 24.

¶ 22     The word "cancel" is defined as "to terminate a promise, obligation, or right." Black's Law Dictionary (11th ed. 2019). The word "terminate" is defined as "[t]o put an end to; to bring to an end." Black's Law Dictionary (11th ed. 2019). Given these definitions, the allegations in plaintiff's first amended complaint, construed in the light most favorable to the plaintiff, are insufficient to establish that defendant intended to cancel or terminate the Agreement. In this regard, we observe that, although the Agreement itself has expired, the parties continued (and continue) to do business together. Indeed, as plaintiff acknowledges in the first amended complaint, even after the expiration of the Agreement, defendant continued (and continues) to provide plaintiff with new motor vehicle products, reimburse plaintiff for warranty service, provide plaintiff with trademarked material and signage, and list plaintiff as a Vanderhall dealer on its website. Further, plaintiff continued (and continues) to sell and service Vanderhall motor vehicles, advertise new Vanderhall motor vehicles for sale, display Vanderhall trademarks, and receive new Vanderhall products from defendant. Thus, the allegations in plaintiff's first amended complaint are insufficient to establish that defendant was required to provide notice under section 4(d)(6)(A) of the Act (815 ILCS 710/4(d)(6)(A) (West 2020)) on the basis that defendant intended to cancel or terminate the Agreement.

¶ 23     The word "extend" is defined as "[to] continu[e] *** the same contract for a specified period." Black's Law Dictionary (11th ed. 2019) (defining "extension"). The word "renew" is defined as "[to] re-creat[e] *** a legal relationship or *** [to] replace[ ] *** an old contract with a new contract, as opposed to the mere extension of a previous relationship or contract." Black's Law Dictionary (11th ed. 2019) (defining "renewal"). Given these definitions, the allegations in

plaintiff's first amended complaint, construed in the light most favorable to plaintiff, are insufficient to establish that defendant intended not to extend or renew Agreement. Again, we observe that, although the Agreement itself has expired, defendant continues to provide new motor vehicle products to plaintiff and plaintiff continues to sell and service Vanderhall products. Thus, despite the expiration of the Agreement, the parties have a new contractual relationship. Consequently, the allegations in plaintiff's first amended complaint are insufficient to establish that defendant was required to provide notice under section 4(d)(6)(A) of the Act (815 ILCS 710/4(d)(6)(A) (West 2020)) on the basis that defendant intended not to extend or renew the Agreement.

¶ 24    We recognize that section 4(d)(6)(B) of the Act requires notice at least 60 days before the expiration date of an agreement if a manufacturer "intends to change substantially or modify the sales and service obligations or capital requirements of a motor vehicle dealer as a condition to extending or renewing the existing franchise or selling agreement." 815 ILCS 710/4(d)(6)(B) (West 2020). To the extent that this provision applies, the trial court determined that the alleged modification at issue—authorizing a Vanderhall dealer in Hickory Hills, 16 miles from plaintiff's authorized retail location—did not constitute a substantial modification. The court reasoned that the Act provides for an "area of exclusivity" of 10 miles in counties such as Du Page, with a population greater than 300,000 people (see 815 ILCS 710/2(q), 4(e)(8) (West 2020)) and noted that the Hickory Hills dealership was "much further" from plaintiff's facility than the Act's 10-mile "area of exclusivity." On appeal, plaintiff does not dispute this finding by the trial court.

¶ 25    Our holding is consistent with the outcome reached in *Cabriolet Porsche Audi, Inc. v. American Honda Motor Co.*, 773 F.2d 1193 (11th Cir. 1985). In that case, the United States Court

of Appeals for the Eleventh Circuit applied provisions of Florida's automobile franchise law that are analogous to section 4(d)(6) of the Act. As quoted in the *Cabriolet Porsche Audi, Inc.* decision:

"Subsection 320.64(8) is violated if a motor vehicle manufacturer, distributor or importer

'has unfairly or without due regard to the equities of a motor vehicle dealer, or without just provocation, canceled or failed to renew, the franchise agreement of such motor vehicle dealer.'

Section 320.641(1)(a) provides that motor vehicle manufacturers, distributors and importers

'shall notify the motor vehicle dealer and forward a copy of such notice to the department of *** [their] intention to discontinue, cancel, or fail to renew the franchise agreement of any of its motor vehicle dealers at least 90 days before the effective date thereof, together with the specific grounds for discontinuation, cancellation, or failure to renew of said agreement, if discontinued, canceled, or not renewed.' " *Cabriolet Porsche Audi, Inc.*, 773 F.2d at 1213-14 (quoting Fla. Stat. §§ 320.64(8), 320.641(1)(a) (1984)).

The district court found that the distributor violated both statutory provisions by "refus[ing] to renew *** [the] dealership agreement when it expired by its own terms on October 31, 1979." *Cabriolet Porsche Audi, Inc.*, 773 F.2d at 1214. The circuit court of appeals, however, disagreed. *Cabriolet Porsche Audi, Inc.*, 773 F.2d at 1213-14.

¶ 26    The reviewing court held that both Florida statutes "contemplate *an actual termination* of the business relationship between the dealer and the distributor." (Emphasis added.) *Cabriolet Porsche Audi, Inc.*, 773 F.2d at 1214. The court noted that, after the expiration of the agreement,

the distributor continued sending cars and engaged in business with the dealer and did not take any "steps toward formal termination of the dealership." *Cabriolet Porsche Audi, Inc.*, 773 F.2d at 1214. The court continued:

"If anything, [the distributor's] conduct implied a renewal of the dealership agreement. The only step [the distributor] failed to take was to renew the agreement formally in writing. We will not put form above substance in this instance. [The distributor's] conduct did not amount to a 'failure' to renew within the meaning of the Florida Statute. Thus, 320.641(1)(a) and 320.64(8) do not apply." *Cabriolet Porsche Audi, Inc.*, 773 F.2d at 1214.

The court therefore reversed the district court's finding that the distributor violated the Florida statutes. Since the Florida statutes analyzed in *Cabriolet Porsche Audi, Inc.*, are similar to the notice and good cause provisions in section 4(d)(6) of the Act, *Cabriolet Porsche Audi, Inc.* is persuasive authority here for holding that defendant was not required to provide notice and good cause, because the parties' continued business relationship beyond the Agreement's expiration date "implied a renewal of the dealership agreement." *Cabriolet Porsche Audi, Inc.*, 773 F.2d at 1214.

¶ 27    Plaintiff insists that allowing an expiration date in a franchise agreement to take effect without requiring the manufacturer to provide statutory notice would render the Act's notice provision "completely meaningless." As noted above, however, under the plain language of the Act, the notice provision is inapplicable under the facts of this case because defendant did not cancel or terminate the Agreement or refuse to extend or renew the Agreement. Rather, the parties contracted to have the Agreement automatically expire on October 31, 2019. Additionally, plaintiff does not direct us to any provision in the Act that prohibits the parties from agreeing to a contract with an automatic expiration date or that requires statutory notice prior to the expiration of a

contract where the parties' business relationship continues after the expiration date stated in the contract.

¶ 28    For the reasons set forth above, we affirm the trial court's dismissal of count I of plaintiff's first amended complaint.

¶ 29                    C. Count II—Breach of Implied-In-Fact Contract

¶ 30    Alternatively, plaintiff argues that the trial court erred in dismissing with prejudice count II of its first amended complaint, because that count states a cause of action for breach of an implied-in-fact contract. In this regard, plaintiff argues that the parties formed an implied-in-fact contract as evidenced by the fact that the Agreement's expiration date of October 31, 2019, "came and went without event and with both parties thereafter continuing to operate in a course of dealings identical to their dealings prior to [the expiration] date." Plaintiff further alleges that defendant breached "a material condition" of the implied-in-fact-contract—plaintiff's right to be the exclusive Vanderhall dealership within 75 miles—when defendant appointed a Vanderhall dealership 16 miles from plaintiff's dealership.

¶ 31    Defendant responds that plaintiff failed to allege a viable claim for breach of an implied-in-fact contract. Significantly, defendant asserts that plaintiff's complaint failed to allege any facts that there was a "meeting of the minds" on an exclusive territory after the Agreement expired. Defendant further contends that, by appointing a dealership 16 miles from plaintiff's location, it "demonstrably did not act in compliance with any 75-mile exclusive territory."

¶ 32    Even in the absence of an express contract, an implied contract can be created as a result of the parties' actions. *Trapani Construction Co., Inc. v. The Elliot Group, Inc.*, 2016 IL App (1st) 143734, ¶ 41. Illinois courts recognize two types of implied contracts—those implied in fact and those implied in law. *Brody v. Finch University of Health Sciences/The Chicago Medical School*,

298 Ill. App. 3d 146, 154 (1998). In this case, count II of plaintiff's complaint alleged a cause of action for breach of an implied-in-fact contract. Contracts implied in fact arise from a promissory expression that may be inferred from the facts and circumstances that demonstrate the parties' intent to be bound. *Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549, ¶ 34. As one court has explained, " '[t]he only difference between an express contract and an implied contract in the proper sense is, that in the former the parties arrive at an agreement by words, either verbal or written, while in the latter the agreement is arrived at by a consideration of their acts and conduct.' " *Litow v. Aurora Beacon News*, 61 Ill. App. 2d 127, 133 (1965) (quoting *People v. Dummer*, 274 Ill. 637, 641 (1916)). The elements of an implied-in-fact contract are the same as those of an express contract—offer, acceptance, and consideration. *Brody*, 298 Ill. App. 3d at 154. Further, the plaintiff must show a mutual intent to contract, *i.e.*, a meeting of the minds. *Brody*, 298 Ill. App. 3d at 154.

¶ 33    To establish an intent to extend the 75-mile exclusivity provision beyond the Agreement's expiration date, plaintiff relies heavily on the fact that the parties continued to do business after the expiration date of the Agreement and continue to do business to this day. Plaintiff is confusing the existence of an implied agreement with the terms of such an agreement. As we previously noted, after the expiration of the Agreement, defendant continued to provide new motor vehicle products to plaintiff and plaintiff continued to sell and service Vanderhall products. Even if we assume that a contractual relationship can be implied from such conduct, there is no indication in the allegations of plaintiff's first amended complaint, other than conclusory statements, that there was a "meeting of the minds" to extend the 75-mile exclusivity provision beyond the expiration date of the Agreement. See *Pooh-Bah Enterprises, Inc.*, 232 Ill. 2d at 473 (noting that a complaint may not rely on mere conclusions of law or fact unsupported by specific factual allegations).

Consequently, plaintiff has failed to demonstrate the existence of an implied contract that included a 75-mile exclusivity provision among its terms. Accordingly, we affirm the trial court's dismissal of count II of plaintiff's first amended complaint.

¶ 34                          D. Count III—Violation of Section 4(b) of the Act

¶ 35    Finally, plaintiff argues that count III of its first amended complaint stated a viable cause of action for a violation of section 4(b) of the Act. Section 4(b) provides that "[i]t shall be deemed a violation for any manufacturer *** to engage in any action with respect to a franchise which is arbitrary, in bad faith or unconscionable and which causes damage to any of the parties or to the public." 815 ILCS 710/4(b) (West 2020). Count III of plaintiff's first amended complaint alleged that defendant's action of "openly and intentionally" breaching the Agreement or the implied-in-fact contract was done in bad faith and was unconscionable, thereby violating section 4(b) of the Act. However, where, as here, plaintiff's claim is premised on the breach of a nonexistent contractual obligation, plaintiff's claim must fail. See *Olympic Chevrolet, Inc. v. General Motors Corp.*, 959 F. Supp. 918, 927 (N.D. Ill. 1997) (holding that the plaintiff could not assert a bad faith claim under the Act where the contract claim failed). Accordingly, we affirm the trial court's dismissal of count III of plaintiff's first amended complaint.

¶ 36                                III. CONCLUSION

¶ 37    For the reasons set forth above, we affirm the judgment of the circuit court of Du Page County, which granted defendant's section 2-615 motion and dismissed with prejudice all three counts of plaintiff's first amended complaint.

¶ 38    Affirmed.

*iMotorsports, Inc. v. Vanderhall Motor Works, Inc.*, 2022 IL App (2d) 210785

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 21-CH-71; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| **Attorneys for Appellant:** | Richard Lee Stavins, William A. Castle Jr., and Diana H. Psarras, of Robbins DiMonte, Ltd., of Chicago, and Nicholas A. Bader and Micah A. Andrews, of Bass Sox Mercer, of Tallahassee, Florida, for appellant. |
| **Attorneys for Appellee:** | David M. Poell, Paul Werner, and Amanda Witt, of Sheppard Mullin Richter & Hampton LLP, of Chicago, Jedediah McClure, of JW McClure Law, of Sycamore, and Jedediah Knight (*pro hac vice*), of Vanderhall Motor Works, Inc., of Provo, Utah, for appellee. |