2023 IL App (2d) 220292-U
No. 2-22-0292
Order filed May 17, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| VAC ENTERPRISES, INC., | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 21-CH-166 |
| | ) | |
| CHITAI YANG, | ) | Honorable |
| | ) | Michael J. Chmiel, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE KENNEDY delivered the judgment of the court.
Justices Jorgensen and Birkett concurred in the judgment.

## ORDER

¶ 1    *Held*:  The trial court properly dismissed, for failure to state a cause of action, plaintiff's complaint for specific performance of a contract for the purchase of real property. Plaintiff failed to allege the existence of a valid, binding, and enforceable contract that was sufficiently definite and certain in all its terms.

¶ 2    Plaintiff, VAC Enterprises, Incorporated, filed a complaint against defendant, Chitai Yang, seeking specific performance of an alleged contract to purchase real property. Plaintiff also filed an emergency motion for a temporary restraining order (TRO) to enjoin defendant from selling the property to another purchaser. Defendant filed (1) a response to the motion for a TRO, (2) a motion to dismiss the complaint under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS

5/2-615 (West 2020)), and (3) a motion to dismiss the complaint under section 2-619 of the Code (*id.* § 2-619). The trial court denied plaintiff's motion for a TRO and later granted defendant's motions and dismissed the complaint without prejudice. Thereafter, plaintiff filed an amended complaint raising essentially the same claims. Defendant filed a motion to dismiss the first-amended complaint under section 2-615 of the Code, which the trial granted. Plaintiff timely appealed. Plaintiff contends that the trial court erred in (1) dismissing its amended complaint under section 2-615 of the Code, (2) dismissing its initial complaint under both section 2-615 and section 2-619 of the Code, and (3) denying its motion for a TRO. We affirm.

¶ 3                                I. BACKGROUND

¶ 4                            A. The Initial Complaint

¶ 5     On November 18, 2021, plaintiff filed its initial complaint against defendant, seeking specific performance of an alleged contract to purchase a Wonder Lake property (Property) owned by defendant. The complaint also sought a TRO and a preliminary injunction barring defendant from selling the Property to another purchaser.

¶ 6     According to the initial complaint, before May 18, 2021, defendant allowed plaintiff "to enter, inspect, maintain, and rent the premises, while [d]efendant was out of the country in Taiwan." While defendant was in Taiwan, plaintiff and defendant began discussing a possible sale of the Property to plaintiff. The parties then exchanged various e-mails, which according to plaintiff, resulted in a valid, binding, and enforceable contract for the sale of the Property. (The complaint alleged that Vic Crisci was an officer of plaintiff. All communications referenced herein took place between Crisci, on behalf of plaintiff, and defendant.)

¶ 7     The e-mails, which were attached to the initial complaint as Exhibit A, contain the following relevant exchange:

¶ 8     On May 18, 2021, plaintiff e-mailed defendant, indicating that "per [their] conversation," plaintiff attached an "updated contract for [defendant's] review." Attached to the e-mail was a document titled "Articles of Agreement for Warranty Deed" (Original Articles). The Original Articles were attached to the initial complaint as Exhibit B. The Original Articles identified the Property and contained the following relevant provision:

> "2. PURCHASE PRICE: The Purchaser agrees to pay Seller the sum of Three Hundred Twenty Thousand Dollars ($320,000.00) in the following manner:
>
>> A. Closing on June 24th, 2021;
>>
>> B. Articles for deed agreement is for a period of 60 months commencing on June 24th, 2021. This agreement can be prepaid without penalty at anytime [*sic*] prior to the 60 months expiring;
>>
>> C. A monthly payment of $825.00 starting on July 24th, 2021, inclusive of real estate taxes shall be paid on the 24th of each month to the Seller through June 24th, 2026[,] or until the principal balance is paid in full. Any additional payments made by Purchaser will be credited towards the principal balance starting on July 24th, 2021."

The Original Articles were unsigned.

¶ 9     On May 21, 2021, defendant responded by e-mail:

> "Let me understand what you are proposing which are [*sic*] different from what we talked about over the phone:
>
> • Interest only
>
> • no down
>
> • mortgage rate at 3.30%

Here is what I am proposing:

• rate at 3.30%

• $20,000.00 down, I like to see some down payments for good faith purposes

• monthly payment - interest $825.00 + principal $200.00 = $1025.00; some principal payments make me feel better

• Amortization schedule for the 1st year, if you want to make additional principal payments for any given period, the Excel will be able to calculate the remaining balance;

<image.png>

• I think this is fair to both of us, $200.00 a month principal payment is less than half of what traditional mortgage would be

Your thoughts?"

¶ 10     On May 24, 2021, plaintiff responded, stating in relevant part:

"What we discussed was basically no interest financing and all payments above the $825 will go toward principal over the 60 months. I asked you to work with me because you wouldn't negotiate on the $320k purchase price. At the end of 5 years, I will be at or around a 260k balance owed to you after additional principal payments I will be making. What I plan will be roughly 10k per year in principal payments over the 5 years. I don't want to lock into a set monthly amount above the $1025 because the winter months could be slower. But I'm fine with a minimum monthly payment of $1025 which includes the taxes. I'd be willing to put 5k down today and give you 5k at the end of July."

¶ 11     Later that day, defendant responded:

"[T]o summarize:

1. you will be making a $1025.00 @month payment for the next 60 months then a balloon payment

2. total of $10,000.00 down, $5000.00 now and $5000.00 at the end of July

3. You plan to make additional principal payment roughly $10,000.00 @year

Do I get it right? Is this what you agree upon?

I am OK with this plan, you can start using the house for weekend renter now except the garage but you will not take possessing [*sic*] of the house until I remove all my belongings out of the house[.]"

¶ 12    On May 25, 2021, plaintiff responded that "all is agreeable on items 1, 2 and 3 you listed[.]" Plaintiff stated that he believed that a car and certain furnishings were included. Defendant responded that those items were not included and would be addressed in a separate sales agreement. Defendant concluded: "Again, you can use the house for weekend rental for now, but no possessing of the house, we will make final agreement when I am there in person. When do you plan to make your first payment?" The parties then exchanged several e-mails on whether the parties had agreed that certain items were included in the sales price. Defendant ultimately told plaintiff: "[Y]ou can have the car, boat and household items in the house for $6000.00."

¶ 13    On May 27, 2021, plaintiff offered defendant $4000 for the "car, boat and personal property" with "the option to pay it on the back end of the 60 month term or at any time prior."

¶ 14    Later that day, defendant responded:

"I will meet you in the middle

Here are [*sic*] what we have agreed upon:

1. you will be making a $1025.00 @month payment for the next 60 months then a balloon payment

2. total of $10,000.00 down, $5000.00 now and $5000.00 at the end of July

3. You plan to make additional principal payment roughly $10,000.00 @year for next 5 years

4. The pontoon boat, the car in the garage and household items we will have a separate bill of sale for the amount of $5000.00 and are sold as is."

After discussing other items in the home, defendant concluded: "Are you OK with this? If you are, then we have a deal, please let me know[.]"

¶ 15    Plaintiff responded: "I'll agree to the terms in your last email and will revise the contract and forward it you. I'm glad we could work the deal out."

¶ 16    Plaintiff further alleged in the initial complaint that defendant was out of the country between May 27 and September 1, 2021, and that the parties agreed that plaintiff could wait to pay the initial $5000 until defendant returned. On or about September 3, 2021, plaintiff paid defendant $5000 and defendant accepted payment. On September 7, 2021, plaintiff sent defendant an e-mail with another document, titled "Articles of Agreement for Warranty Deed" (Final Articles), which plaintiff alleged was "the proposed final" purchase agreement between the parties. The Final Articles were attached to the complaint as Exhibit C (but the e-mail was not attached). The Final Articles provided in relevant part:

"2. PURCHASE PRICE: The Purchaser agrees to pay Seller the sum of Three Hundred Twenty Thousand Dollars ($320,000.00) in the following manner:

A. Closing on September 24th, 2021; See Attached Addendum.

B. Articles for deed agreement is for a period of 60 months commencing on September 24th, 2021. This agreement can be prepaid without penalty at anytime [*sic*] prior to the 60 months expiring;

C. A monthly payment of $1025.00 starting on October 24th, 2021, inclusive of real estate taxes shall be paid on the 24th of each month to the Seller through October 24th, 2026[,] or until the principal balance is paid in full. Any additional payments made by Purchaser will be credited towards the principal balance starting on October 24th, 2021."

Like the Original Articles, the Final Articles were unsigned.

¶ 17    Plaintiff further alleged that the parties met on September 12, 2021, at which time defendant informed plaintiff that he wished to have his attorney review the Final Articles. Thereafter, plaintiff did not hear from defendant. Plaintiff later learned that, on October 22, 2021, defendant listed the Property, along with an adjacent parcel, for $475,000. Plaintiff attached the listing as Exhibit D. Plaintiff alleged that defendant had accepted another offer and would be closing on the sale "shortly."

¶ 18    According to the initial complaint, the e-mails between plaintiff and defendant demonstrated a meeting of the minds on essential contractual terms and that "[b]y way of their email communications *** the parties have entered into a valid, binding, and enforceable contract for the sale of the [Property]." Plaintiff alleged that the terms were "definite and certain," in that the parties agreed that (1) "[p]laintiff was to purchase from *** [d]efendant the [Property] for $320,000.00[,]" (2) "[p]laintiff was to make monthly payments to [d]efendant of $1,025 over a term of 60 months[,]" (3) "[a]dditional principal payments to be made by [p]laintiff of $10,000 over 2 [*sic*] years[,]" and (4) "[p]laintiff was to make a balloon payment after the 60[-]month

term." Plaintiff alleged that it had performed under the contract in that it tendered $5000 and was ready, willing, and able to further perform.

¶ 19    Plaintiff asked that the trial court (1) require specific performance by defendant under the contract, (2) enter a TRO enjoining defendant from selling the Property, and (3) enter a preliminary injunction enjoining defendant from selling the Property.

¶ 20                    B. Motion for a TRO and the Trial Court's Ruling

¶ 21    On the same day that plaintiff filed the initial complaint, plaintiff also filed an "Emergency Motion with Notice for Temporary Restraining Order/Preliminary Injunction" (motion for a TRO), seeking an order restraining defendant from selling the Property.

¶ 22    On November 29, 2021, defendant filed his response to the motion for a TRO. Defendant noted that to obtain a TRO, plaintiff must establish, among other things, a likelihood of success on the merits in the underlying action for specific performance. Defendant asserted that plaintiff could not do so. Defendant noted that to obtain specific performance of a contract, "[t]he contract's terms must be so certain and unambiguous that the court can require the specific thing contracted for be done." *Kane v. McDermott*, 191 Ill. App. 3d 212, 217 (1989). According to defendant, the parties' alleged contract terms were unclear. Defendant noted, among other things, that his e-mails did not confirm the purchase price, showed no agreement on the interest rate, and did not indicate who would pay the real estate taxes during the pendency of the installment agreement.

¶ 23    On November 30, 2021, following a hearing, the trial court denied the motion for a TRO. The court noted that

        "[a] party seeking a TRO must establish, by a preponderance of the evidence, that
        (1) he or she possesses a certain and clearly ascertainable right needing protection, (2) he
        or she has no adequate remedy at law, (3) he or she would suffer irreparable harm without

the TRO, and (4) he or she has a likelihood of success on the merits." *Wilson v. Hinsdale Elementary School District 181*, 349 Ill. App. 3d 243, 248 (2004). With respect to whether plaintiff had established "a certain and clearly ascertainable right needing protection," (*id.*) the court stated:

> "Here, the [c]ourt cannot find *** [p]laintiff has a clearly ascertainable right needing protection, as the [c]ourt cannot find the parties had a meeting of the minds, especially with the most critical element of a sale - *the purchase price* - which was missing from the May 27th exchange. If the Articles evidence *the* deal, they *added* that critical element, and were then never executed." (Emphases in original.)

The court further found that, as to an adequate remedy of law, "nothing suggests the *** Property in this case is unique to the point that money damages could not suffice." In addition, the court found that, without a clearly ascertainable right, plaintiff could not establish irreparable harm or a likelihood of success on the merits.

¶ 24　　　　C. Motions to Dismiss the Initial Complaint and the Trial Court's Ruling

¶ 25　On November 22, 2021, defendant filed (1) a motion to dismiss the initial complaint under section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)) and (2) a motion to dismiss the initial complaint under section 2-619 of the Code (*id.* § 2-619). In his section 2-615 motion, defendant argued that plaintiff failed to allege that it was in full compliance with the alleged contract—specifically, that it made (1) the first $5000 down payment in a timely fashion, (2) the second $5000 down payment in a timely fashion, and (3) one or more of the monthly payments. According to defendant, plaintiff was not entitled to specific performance of an alleged contract where it failed to allege that it was in compliance with the contract.

¶ 26    Defendant also attached to his section 2-615 motion his affidavit averring that he (1) did not receive a $5000 check from plaintiff, but, instead, plaintiff made a direct deposit to defendant's bank account on September 3, 2021; (2) attempted to return the payment to plaintiff by certified mail but plaintiff did not accept delivery; (3) did not intend the e-mails to constitute a binding, final agreement; (4) never signed a contract for the sale of the Property; (5) did not receive the additional $5000 down payment; and (6) did not receive any monthly $1025 payments. Attached to the affidavit as Exhibit A was a copy of the refund check that defendant attempted to deliver to plaintiff along with the unopened envelope.

¶ 27    In his section 2-619 motion, defendant argued that (1) the statute of frauds barred enforcement of the alleged contract and (2) the alleged contract lacked sufficient detail to be enforceable. As to the first argument, defendant argued that "[t]he emails attached to the *** [c]omplaint do not create an agreement, 'in writing, and signed by the party to be charged therewith[ ]' [(quoting 740 ILCS 80/2 (West 2020))]." See 735 ILCS 5/2-619(a)(7) (West 2020) (authorizing dismissal when the statute of frauds bars the claim). Defendant's second argument was identical to the argument he raised in his response to plaintiff's motion for a TRO, *i.e.*, that the alleged contract lacked sufficient detail to be enforceable.

¶ 28    On January 12, 2022, plaintiff filed a combined response to defendant's motions to dismiss. With respect to defendant's section 2-615 motion, plaintiff argued generally that he pled all necessary elements of a claim for specific performance of a contract. With respect to defendant's 2-619 motion, plaintiff argued that (1) the e-mails satisfied the signed writing requirement of the statute of frauds and (2) defendant was estopped from arguing that the contract lacked sufficient detail to be enforceable because, by filing the 2-619 motion, defendant admitted the legal sufficiency of the complaint.

¶ 29    Following a hearing on January 26, 2022, the trial court issued a written order dismissing the initial complaint without prejudice and allowing plaintiff until March 18, 2022, to file an amended complaint. In its order, the court again noted that, although the parties through e-mail arrived at certain necessary elements for a contract to sell the Property, a purchase price was not specified in the exchange. As to defendant's motion to dismiss under section 2-615, the court stated it "generally agree[d] with *** [d]efendant that more is needed in the complaint, if it can be pled." The court further stated, "[c]onsistent with that, the second part of the second motion should be granted." (The court's reference to "the second part of the second motion" refers to defendant's argument in his section 2-619 motion that the agreement lacked sufficient detail to be enforceable, which, as the trial court seemed to recognize, is an argument more appropriately raised in a section 2-615 motion.) The court did not rule on the "first part of the second motion," which raised the statute of frauds claim, stating that it was "perplexed with the cited law and jurisprudence arising under the same." The court concluded: "As such, at this stage, and without more, the Court reserves potential application of the Statute of Frauds to dispatch the complaint[.]"

¶ 30                              D. Plaintiff's Amended Complaint

¶ 31    On March 18, 2022, plaintiff filed a "First Amended Verified Complaint for Preliminary and Permanent Injunctive Relief and Other Relief" (amended complaint). The amended complaint was essentially identical to the initial complaint but added allegations that (1) defendant's delay in returning to the United States caused the parties not to close on the date agreed; (2) defendant acquiesced to the initial $5000 payment being made on September 3, 2021, and to the second $5000 payment being made at closing; (3) plaintiff was unable to make the first $1025 payment due to the delay in closing caused by defendant; (4) defendant's refusal to communicate further with plaintiff after being provided with the Final Articles prohibited plaintiff from performing;

(5) plaintiff was ready, willing, and able to make the $1025 monthly payments but could not do so due to defendant's failure to close the transaction; and (6) defendant's silence and refusal to perform estopped defendant from requiring plaintiff to strictly perform under the contract. As in the initial complaint, plaintiff sought an order for specific performance by defendant under the contract and a preliminary injunction preventing defendant from selling the Property. As with the initial complaint, plaintiff attached the e-mails, the Original Articles, the Final Articles, and the listing for the Property. There were no new exhibits.

¶ 32        E. Motion to Dismiss the Amended Complaint and Trial Court's Ruling

¶ 33    On April 27, 2022, defendant moved to dismiss the amended complaint under section 2-615 of the Code. Defendant's motion raised the same arguments raised in his section 2-615 motion to dismiss the initial complaint, *i.e.*, that plaintiff failed to allege that it was in full compliance with the alleged contract. Defendant's affidavit was again attached. Defendant did not file a section 2-619 motion to dismiss or raise any argument as to the statute of frauds.

¶ 34    On June 1, 2022, plaintiff filed its response. Plaintiff first argued that the trial court should disregard defendant's affidavit because the court was confined to the allegations in the complaint when considering a motion to dismiss under section 2-615 of the Code. Next, plaintiff argued that it sufficiently pled all the necessary elements of specific performance. More specifically, plaintiff argued that it sufficiently pled that it complied with the terms of the contract or that it was ready, willing, and able to perform.

¶ 35    A hearing took place on June 29, 2022. Following the hearing, on July 21, 2022, the trial court granted defendant's motion and dismissed the amended complaint with prejudice. In granting the motion, the court found that "a critical term for what relief is being sought is missing in the pleadings[.]" The court elaborated:

"If the plaintiff believes a cause of action can actually be stated, missing I believe, a critical term, it's the purchase price. I know there is a payment arrangement. I know there is a suggestion of performance, but I believe, one, a necessary element to arrive at a binding agreement is missing; two, therefore, how could a court possibly enter—or order, excuse me, specific performance if we don't know, respectfully, what is being required to be performed."

The court concluded: "I just don't think it can be done at this point."

¶ 36    Plaintiff timely appealed.

¶ 37                                   II. ANALYSIS

¶ 38    Plaintiff contends that the trial court erred in (1) dismissing its amended complaint under section 2-615 of the Code, (2) dismissing its initial complaint under both section 2-615 and section 2-619 of the Code, and (3) denying its motion for a TRO. In response, defendant contends that the trial court properly dismissed plaintiff's amended complaint under section 2-615 of the Code because plaintiff failed to allege a valid, binding, and enforceable contract or, alternatively, that plaintiff was in compliance with any alleged contract. Defendant does not respond to plaintiff's second or third argument.

¶ 39                      A. Dismissal of Plaintiff's Amended Complaint

¶ 40    We first consider whether the amended complaint was properly dismissed under section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)). A motion to dismiss under section 2-615 of the Code challenges the legal sufficiency of a complaint based on defects apparent on its face. *Wilson v. County of Cook*, 2012 IL 112026, ¶ 14. The critical inquiry in reviewing a dismissal under section 2-615 is whether the allegations in the complaint, construed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Doe-3 v.*

*McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 16. In making this determination, the court accepts as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). "However, a plaintiff may not rely on mere conclusions of law or fact unsupported by specific factual allegations." *iMotorsports, Inc. v. Vanderhall Motor Works, Inc.*, 2022 IL App (2d) 210785, ¶ 13. "Thus, only those facts apparent from the face of the pleadings, documents attached to the complaint (including exhibits, depositions, and affidavits), matters of which the court can take judicial notice, and judicial admissions in the record may be considered in ruling on a section 2-615 motion." *Id.* This court reviews *de novo* a trial court order granting a section 2-615 motion. *Northwestern Illinois Area Agency on Aging v. Basta*, 2022 IL App (2d) 210234, ¶ 33. Further, we may affirm the judgment on any grounds apparent in the record, regardless of the court's reasoning. *iMotorsports Inc.*, 2022 IL App (2d) 210785, ¶ 13.

> "To state a cause of action for specific performance, a plaintiff must allege: (1) the existence of a valid, binding, and enforceable contract; (2) compliance by the plaintiff with the terms of the contract, or proof that the plaintiff is ready, willing, and able to perform the contract; and (3) the failure or refusal of the defendant to perform his part of the contract." *Schilling v. Stahl*, 395 Ill. App. 3d 882, 884 (2009).

¶ 41 To be entitled to specific performance of a contract, "it is not enough to show that some kind of a contract exists between the parties, but the contract must be so definite and so certain in all of its terms that the court can require the specific thing contracted for to be done." *Leach v. Hazel*, 398 Ill. 33, 39 (1947); see *Kane*, 191 Ill. App. 3d at 217. A contract for the sale of real estate cannot be specifically enforced unless the writing contains (1) the names of the vendor and the vendee, (2) a description of the property sufficiently definite to identify it, (3) the price, (4) the

terms and conditions of sale, and (5) the signature of the party to be charged. *Leach*, 398 Ill. at 39; *Kane*, 191 Ill. App. 3d at 217. "The method or manner of payment is an essential part of an agreement to purchase real estate[.]" *Schilling*, 395 Ill. App. 3d at 885.

¶ 42    Here, in granting defendant's 2-615 motion to dismiss the amended complaint, the trial court found that plaintiff failed to allege a valid, binding, and enforceable contract. More specifically, the court found that an essential term—the purchase price—was missing. We note that, in its opening brief, when challenging the court's dismissal of its amended complaint under section 2-615, plaintiff does not address the specific basis of the court's ruling. Plaintiff argues only generally that "paragraphs 10-28 and 47-52 of the Amended Complaint allege the necessary elements [to allege specific performance]." Plaintiff confines its argument to the issue of whether the amended complaint sufficiently alleged that defendant "frustrated [p]laintiff's performance [of the alleged contract]." Nevertheless, in its later discussion challenging the court's denial of plaintiff's motion for a TRO, plaintiff does address the court's finding that the parties did not reach agreement on the purchase price. We will consider those arguments here as they are also reasonably applicable to the court's ruling on defendant's section 2-615 motion to dismiss.

¶ 43    We agree with the trial court's conclusion that plaintiff failed to state a claim for specific performance because plaintiff failed to allege a valid, binding, and enforceable contract. According to paragraph 42 of plaintiff's amended complaint, the parties had agreed to the following "definite and certain" terms in their e-mail exchange: (1) "[p]laintiff was to purchase from *** [d]efendant the [Property] for $320,000.00[,]" (2) "[p]laintiff was to make monthly payments to [d]efendant of $1,025 over a term of 60 months[,]" (3) "[a]dditional principal payments to be made by [p]laintiff of $10,000 over 2 [*sic*] years[,]" and (4) "[p]laintiff was to make a balloon payment after the 60[-]month term." Certainly, with respect to the purchase price, the Original Articles—attached

to plaintiff's initial e-mail to defendant—set forth a sales price of $320,000, and plaintiff mentioned that price in later e-mails. However, defendant never affirmatively acknowledged or confirmed his agreement with that price. Plaintiff argues that, after it sent the initial e-mail, "*not once* did [defendant] propose a different purchase price." (Emphasis in original.) Plaintiff essentially asks us to assume that defendant agreed with a price that was never expressly discussed, but it cites no authority to support such an assumption. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *Canteen Corp. v. Department of Revenue*, 123 Ill. 2d 95, 111-12 (1988) ("A court of review is entitled to have the issues clearly defined and to be cited pertinent authority. A point not argued or supported by citation to relevant authority fails to satisfy the requirements of Rule 341 ([h])(7).").

¶ 44    In any event, even if we were to find that defendant's failure to expressly challenge the proposed sales price could be interpreted as his implicit agreement with that price, also absent from the e-mail exchange is any showing that the parties agreed on other essential terms, such as an applicable interest rate or who was responsible for the real estate taxes. In defendant's May 21, 2021, response to plaintiff's initial e-mail, defendant commented that the terms of the Original Articles were "different" from what they had discussed on the phone, which, according to defendant, included "[i]nterest only" payments and a "mortgage [*i.e.*, interest] rate at 3.30%." Defendant then proposed a 3.30% interest rate, with a $1025 monthly payment broken down as follows: "interest $825.00 + principal $200.00." In plaintiff's e-mail response, plaintiff commented that they had discussed "basically no interest financing and all payments above the $825 will go toward principal over the 60 months." Plaintiff stated: "I don't want to lock into a set monthly amount above the $1025 ***. *But I'm fine with a minimum monthly payment of $1025 which includes the taxes*." (Emphasis added.) While plaintiff said that it had initially hoped for no-

interest financing, plaintiff seemingly accepted defendant's proposed payment structure (including interest), as long as it included the real estate taxes. However, it is not clear that, in accepting the proposed $1025 monthly payment, plaintiff accepted a particular interest rate—specifically, defendant's proposed 3.30% rate. Similarly, defendant's response to plaintiff's acceptance of the $1025 monthly payment does not acknowledge plaintiff's comment regarding the real estate taxes; he simply reiterates, "you will be making a $1025.00 @ month payment for the next 60 months then a balloon payment[.]"

¶ 45    Notably, the $1025-per-month payment term that the parties agreed to is consistent with both the payment defendant proposed—which included 3.30% interest and a $200 principal payment—*and* the payment plaintiff proposed—which included the real estate taxes. Because plaintiff did not expressly reject (or accept) defendant's interest proposal, we cannot say that the parties agreed on the issue of interest. Similarly, because defendant (1) did not affirm, or even acknowledge, plaintiff's understanding that it would make a $1025 monthly payment that "includes the taxes[,]" or (2) assert that he would be responsible for the tax payments, we cannot say that the parties reached an agreement as to those terms. (We note, too, that the e-mail exchange makes no reference to actual interest calculations or to an actual amount of yearly real estate taxes, making it impossible to determine precisely what the monthly payment included.)

¶ 46    Thus, because plaintiff failed to allege the existence of a valid, binding, and enforceable contract that was sufficiently definite and certain in all its terms, it failed to state a claim for specific performance. Accordingly, we affirm the trial court's dismissal with prejudice.

¶ 47                                    B. Dismissal of the Initial Complaint

¶ 48    Plaintiff next argues that the trial court erred in dismissing his initial complaint under section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)) and under section 2-619 of the Code

(*id.* § 2-619). Generally, a party who files an amended pleading forfeits any objection to the trial court's rulings on any former complaints. *Jacobson v. Gimbel*, 2013 IL App (2d) 120478, ¶ 19. However, where a plaintiff realleges previously dismissed allegations, he preserves a challenge to the dismissal of the former complaint. *Id.* Here, because plaintiff realleged the previously dismissed allegations, the argument is not forfeited.

¶ 49    Concerning the trial court's dismissal of the initial complaint under section 2-615, plaintiff generally argues, as he did with his amended complaint, that he alleged a sufficient claim for specific performance. However, for the same reasons set forth above, we disagree. Thus, we find that the initial complaint was properly dismissed under section 2-615.

¶ 50    Regarding the trial court's dismissal of the initial complaint under section 2-619, plaintiff argues that the trial court applied the wrong standard and improperly dismissed the complaint under section 2-619 for failing to allege sufficient facts. Plaintiff argues that defendant, by filing a section 2-619 motion, admitted the sufficiency of the allegations. To be sure, a motion to dismiss brought pursuant to section 2-619 admits the sufficiency of the claim but asserts a defense outside of the complaint that defeats it. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. When proceeding under a section 2-619 motion, the movant concedes all well-pleaded facts set forth in the complaint, but not conclusions of law or conclusory factual allegations not supported by specific allegations of fact. *Id.*

¶ 51    Here, however, although the trial court's written order indicated that it granted defendant's motions under both sections 2-615 and 2-619, the court's analysis suggests that it applied the argument from the second half of defendant's section 2-619 motion—*i.e.*, that the alleged agreement lacked sufficient detail to be enforceable—as a basis for its dismissal of the complaint under section 2-615. As for the argument raised in the first half of the section 2-619 motion—*i.e.*,

that the complaint was barred by the statute of frauds—the court "reserve[d]" ruling and did not grant the motion on that basis. Thus, we find no error. Moreover, even if the trial court's dismissal under section 2-619 were erroneous, it would not affect our ultimate holding that the complaint was properly dismissed. See *Bruss v. Przybylo*, 385 Ill. App. 3d 399, 426 (2008).

¶ 52                                     C. Denial of the Motion for a TRO

¶ 53     Plaintiff's final argument is that the trial court erred in denying his motion for a TRO. A party seeking a TRO must establish facts demonstrating that (1) it has a protected right, (2) it will suffer irreparable harm if injunctive relief is not granted, (3) it has no adequate remedy at law, and (4) there is a likelihood of success on the merits. *County of Du Page v. Gavrilos*, 359 Ill. App. 3d 629, 634 (2005). In moving for a TRO, the party need not make out its entire case; rather, it need only demonstrate the existence of a fair question on the elements and persuade the trial court to preserve the status quo until the case can be decided on the merits. *Id.* A trial court's decision to grant or deny a TRO is reviewed for an abuse of discretion. *Wilson*, 349 Ill. App. 3d at 248.

¶ 54     We find no abuse of discretion. The trial court concluded, among other things, that plaintiff could not establish a clearly ascertainable right in need of protection. We agree. As discussed above, plaintiff has not sufficiently alleged a meeting of the minds on the essential terms of the alleged contract, and, thus, the complaint was properly dismissed.

¶ 55                                     III. CONCLUSION

¶ 56     For the reasons stated, we affirm the orders of the circuit court of McHenry County, dismissing plaintiff's amended complaint, dismissing plaintiff's initial complaint, and denying plaintiff's motion for a TRO.

¶ 57     Affirmed.